UNITED STATES of America, Appellee,

Thomas Bogert, Brock Scaglione and
Djuro Lekocevic, Defendants,

v.

Bernie CAWLEY, Defendant–Appellant.

No. 347, Docket 94–1196.

United States Court of Appeals,
Second Circuit.

Argued Nov. 17, 1994.

Decided Feb. 14, 1995.

Maura B. Leeds, Fried, Frank, Harris,
Shriver & Jacobson, New York City (Stuart
M. Altman, Charles King, Jean Sheridan,

Fried, Frank, Harris; Shriver & Jacobson, on the brief), for defendant-appellant.

Paul A. Engelmayer, Asst. U.S. Atty. for S.D.N.Y. (Mary Jo White, U.S. Atty., on the brief), for appellee.

Before: OAKES, ALTIMARI, and WALKER, Circuit Judges.

ALTIMARI, Circuit Judge:

Defendant-appellant Bernie Cawley appeals from an amended judgment of the United States District Court for the Southern District of New York (Wood, J.), following a finding that Cawley had violated the conditions of supervised release that had been set following his earlier guilty plea to illegally dealing in firearms, in violation of 18 U.S.C. § 922(a)(1). The district court revoked Cawley's term of supervised release, and resentenced him to a two-year term of imprisonment for the release violations. Cawley, who is presently incarcerated on state charges, is scheduled to begin serving his sentence upon his release from state custody.

On appeal, Cawley does not challenge the district court's finding that he violated the conditions of supervised release, but rather contests his sentence. Cawley principally contends that the district court erred in calculating his sentence by (1) wrongly characterizing the act of witness intimidation as a Grade A violation of supervised release; (2) assigning an unwarranted sentence enhancement for perjury; and (3) engaging in impermissible double counting when it considered conduct that was factored into his original sentence.

For the reasons set forth below, we affirm the district court's judgment.

## BACKGROUND

Cawley, a former New York City police officer, pleaded guilty in 1991 to selling firearms illegally to an undercover agent in violation of 18 U.S.C. § 922(a)(1). The district court sentenced Cawley to eight months' imprisonment, followed by a three-year term of supervised release. Cawley's term of imprisonment concluded, and his supervised release commenced, on February 2, 1992.

In a petition submitted to the district court on June 29, 1992, the Probation Department charged that during the preceding two months, Cawley had violated two conditions of his supervised release. Both alleged violations grew out of a then-ongoing prosecution of Cawley by the Bronx District Attorney's Office (the "D.A.'s Office") on charges that in late 1990, while a police officer, Cawley had burglarized several Bronx apartments and stolen from them money, weapons, and narcotics. The first violation specification charged that on May 13, 1992, following a pretrial conference in the burglary case, Cawley threatened a witness against him in that case, resulting in a complaint being filed for his arrest on witness intimidation charges. The second specification charged that on June 5, 1992, Cawley failed to appear at a pretrial conference in Bronx Supreme Court. Cawley ultimately pleaded guilty to the burglary charges and was sentenced to three years' imprisonment, which he is currently serving.

A hearing on the alleged violations of supervised release was held before the district court in February 1994. Although Cawley admitted that he had failed to appear for his court date, the government and the defense offered conflicting versions of the facts surrounding the alleged witness intimidation incident.

### (A) *The Government's Case*

At the hearing, the government presented Marco Ortiz, a co-defendant whom Cawley learned was likely to testify against him in the pending state burglary case, and Ortiz's girlfriend Josephine Keaney. Both Ortiz and Keaney testified that following a pretrial conference in the state burglary case, Cawley approached Ortiz in a hallway in the courthouse and called him a "rat" for talking to the D.A.'s Office. Cawley's brother then followed the two into an elevator and told them that "for ratting on [Cawley]," "maybe Bernie can't touch you, but I could."

Thereafter Ortiz and Keaney left the courthouse, and while driving down the Grand Concourse in the Bronx, Cawley

caught up to them in his car and began yelling at them in a threatening tone. Cawley insulted Ortiz, and told him that he knew he was talking to the D.A., that he would "kick his ass," and that he wanted to fight with him one-on-one. Cawley, a bodybuilder who was substantially larger than Ortiz, had frequently bragged to Ortiz about the on- and off-duty beatings he had inflicted on various people, and about the firearms he carried. Cawley followed Ortiz to Ortiz's mother's home, where he continued to challenge Ortiz to fight. Ortiz's mother demanded that Cawley leave, but he refused until Ortiz and his brother came out with a baseball bat. Later that day, Ortiz and Keaney filed a criminal complaint against Cawley.

### (B) *The Defense Case*

Cawley testified that contrary to the testimony of Ortiz and Keaney, it was Ortiz who instigated the confrontation by intentionally jostling Cawley's mother outside the courtroom. Cawley's mother also testified that she had been intentionally pushed. Cawley claimed that thereafter Ortiz challenged him to a fight, and chased him down the Grand Concourse. Cawley stated that he refused Ortiz's invitation to fight at Ortiz's mother's house, but that he drove to Ortiz's mother's house anyway. Cawley maintained that his own conduct that day was entirely unrelated to Ortiz's cooperation with the D.A.'s Office, and that he never alluded to the fact that Ortiz was cooperating with the D.A.'s Office.

On cross-examination, Cawley admitted that he had known that Ortiz was cooperating with the D.A.'s Office, that he "might have" called Ortiz "a rat," and that Ortiz "was in a position to give very damaging testimony against him." Cawley explained, however, that if he used the term "rat," it connoted only that Ortiz was a "little rodent." Neither Cawley nor his mother could explain why Ortiz would intentionally bump into Mrs. Cawley. Cawley also admitted on cross-examination that he had lied various times under oath while an officer, had raped a prostitute, and had beaten up civilians on a "daily basis," oftentimes unprovoked.

### (C) *The District Court's Findings and Sentence*

The district court found Cawley guilty of both specifications, stating that it did not believe Cawley's version of the facts. Rather, the district court concluded that Cawley intimidated Ortiz because of Ortiz's willingness to testify against Cawley in his upcoming state trial.

The district court next found that Cawley's criminal history category at the time of his original sentencing was I and that the witness intimidation violation, the more severe of the violations, was a Grade A violation as defined in U.S.S.G. § 7B1.1(a)(1), resulting in a sentencing range of 12–18 months. *See* U.S.S.G. § 7B1.4. The district court thereupon stated that it would depart upward to a sentence of 24 months imprisonment, the statutory maximum for such violations, *see* 18 U.S.C. §§ 3581(b)(4), 3583(e)(3), finding three independent bases for upward departure: (1) the fact that Cawley had committed perjury; (2) Application Note 2 to U.S.S.G. § 7B1.4, which provides that where a defendant after his initial sentencing has been sentenced for a new offense, an upward departure may be appropriate to take the new offense into account; and (3) Application Note 4 to U.S.S.G. § 7B1.4, which provides for an upward departure where the initial sentence involved a downward departure. The district court stated that it would upwardly depart two levels for Cawley's perjury. In the alternative, it would depart upward a total of two levels: one based on Application Note 2 and one based on Application Note 4.

Cawley now appeals solely to challenge the propriety of his sentence.

### DISCUSSION

On appeal, Cawley contends that the district court erred in three ways in calculating his sentence. First, Cawley claims that witness intimidation was wrongly held to constitute a Grade A violation of supervised release. Second, Cawley asserts that the district court's finding of perjury at the supervised release violation hearing was not supported by the record and that the resulting upward departure was unauthorized by law.

Finally, Cawley argues that the district court engaged in impermissible double counting when it considered the state burglary charges which were factored into his original sentence. We address each argument in turn.

■ In considering Cawley's challenge to his sentence, we review the district court's legal interpretation of the Sentencing Guidelines *de novo* and the district court's findings of fact for clear error. *See United States v. Deutsch*, 987 F.2d 878, 884–85 (2d Cir.1993) (citations omitted).

### (1) *Grade A Violation of Supervised Release*

■ Cawley's first argument on appeal is that the district court erred in classifying the specification of witness intimidation as a Grade A violation of supervised release. Guidelines Chapter 7B, entitled "Probation and Supervised Release Violations," contains policy statements which prescribe penalties for the violation of the judicial order imposing supervision. Guidelines policy statement § 7B1.1 divides violations of conditions of supervised release into three grades, according to the conduct's degree of seriousness. The grade of the supervised release violation must be determined in order to set the appropriate sentencing range on the Revocation Table under U.S.S.G. § 7B1.4. A Grade A violation is conduct constituting an offense punishable by a term of imprisonment exceeding one year that is a "crime of violence." U.S.S.G. § 7B1.1(a)(1). Under New York law, intimidation of a witness in the third degree is punishable by a minimum of one year incarceration. Cawley argues, however, that witness intimidation is not a "crime of violence" within the meaning of U.S.S.G. § 7B1.1. Cawley's argument is without merit.

Under the Guidelines, a "crime of violence" includes any offense punishable by more than one year's imprisonment that "has as an element the use, attempted use, or threatened use of physical force against the person of another" or "involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. §§ 4B1.2(1)(i) and (ii); *see* U.S.S.G. § 7B1.1, comment. (n. 2).

Additionally, the term "crime of violence" includes attempts to commit such crimes. U.S.S.G. § 4B1.2, comment. (n. 1).

In the case before us, the record amply supports the district court's finding that Cawley's condition-violating conduct was a Grade A violation. Ortiz and Keaney, whose testimony the district court credited, testified that Cawley pulled up alongside their car on the Grand Concourse and threatened to "kick [Ortiz's] ass," and "to take care of [Ortiz] one-on-one ... at Mosholu Parkway." In addition, Ortiz's knowledge of Cawley's violent propensities made the threat all the more real—Cawley, a weightlifter, had bragged about beating people up, and about the firearms he carried. Thus, Cawley's intimidation of Ortiz constituted the "threatened use of physical force against the person of another," U.S.S.G. § 4B1.2(1)(i), and "present[ed] a serious potential risk of physical injury to another," U.S.S.G. § 4B1.2(1)(ii). Accordingly, the district court's finding that Cawley's conduct constituted a Grade A violation within the meaning of U.S.S.G. § 7B1.1 was proper.

### (2) *Perjury*

■ Cawley next argues on appeal that the district court erred in concluding that an upward departure was warranted for Cawley's perjury at his supervised release violation hearing. Cawley advances two arguments to this end. First, Cawley contends that the Guidelines do not authorize an upward departure for perjury at a hearing on revocation of supervised release. Cawley is mistaken.

Upward departures are appropriate where " 'there exists an aggravating ... circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines....' " U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)). Clearly a defendant's perjury is a significant "aggravating circumstance" in whatever context it arises. In fact, § 3C1.1 of the Guidelines contemplates an enhancement for perjury in all of its forms. *See, e.g.,* U.S.S.G. § 3C1.1, comment. (n. 3(b)) (two-level enhancement for obstruc-

tion of justice applies to "committing, suborning, or attempting to suborn perjury"); *id.,* comment. (n. 3(h)) (enhancement applies to "providing materially false information to a probation officer" in some circumstances). While the Guidelines for sentencing upon violations of supervised release make no explicit provision for a defendant's perjury at a violation hearing, we conclude that such perjury would constitute "an aggravating ... circumstance of a kind, or to a degree, not adequately taken into consideration" by the Commission. 18 U.S.C. § 3553(b).

■ Cawley's second argument is that even if the enhancement were available, the district court erred in finding that he committed perjury at his hearing. Cawley's argument is meritless.

A sentence enhancement for perjury is warranted when a defendant testifying under oath "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan,* —— U.S. ——, ——, 113 S.Ct. 1111, 1116, 122 L.Ed.2d 445 (1993). In determining whether perjury has been committed, the court must examine the alleged false statements in the light most favorable to the defendant. *See* U.S.S.G. § 3C1.1, comment. (n. 1). We have interpreted this standard as directing the sentencing court "to resolve in favor of the defendant those conflicts about which the judge, after weighing the evidence, has no firm conviction." *United States v. Cunavelis,* 969 F.2d 1419, 1423 (2d Cir.1992) (citations and internal quotations omitted).

Measured against these standards, the evidence amply supports the district court's unequivocal conclusion "that Mr. Cawley's version of events is untrue, ... that he committed perjury before me ..., [and that] Mr. Cawley's account [was] completely unbelievable." Cawley's testimony (1) that Ortiz and not Cawley was the aggressor throughout the two men's interaction on May 13, 1992, and (2) that Cawley had at no point alluded to the fact that Ortiz was cooperating with state prosecutors was belied by the testimony of Keaney and Ortiz, all of which the district court weighed and credited as truth-

ful. It was also contradicted by the contemporaneous complaint that Keaney and Ortiz filed against him with the police on May 13, 1992, charging Cawley with seeking to intimidate a witness. In sum, the district court unequivocally found that Cawley perjured himself at this hearing. Accordingly, we find that the district court's consideration of Cawley's perjury as a basis for a two-level upward departure was proper.

### (3) *Double Counting*

■ Cawley's final argument on appeal is that the district court misapplied the Sentencing Guidelines when it departed upwardly based on Application Notes 2 and 4 to U.S.S.G. § 7B1.4 because both departures were based, in part, on Cawley's state burglary crimes. According to Cawley, the state charges were adversely factored into his original federal sentence when the district court denied him credit for acceptance of responsibility and reduced the amount of departure for substantial assistance. Cawley claims that the district court's consideration of that same conduct at resentencing constituted impermissible double counting.

As an initial matter, we observe that the two one-level departures based on Application Note 2 and Application Note 4 are an alternative basis for imposing a sentence enhancement, and are not at all a necessary means of authorizing the statutory maximum sentence because of the proper enhancement based on Cawley's perjury. In any event, we find Cawley's challenge to these two grounds for departure unconvincing.

A review of the record reveals that at Cawley's original sentencing, the district court implied that its failure to credit him with acceptance of responsibility or grant him a full downward departure for substantial assistance was, in part, due to Cawley's lack of remorse as evidenced by his arrest on state burglary charges. At resentencing, the district court departed upwardly one level based on each of two independent grounds. Application Note 2 to U.S.S.G. § 7B1.4 provides that an upward departure may be warranted where, as here, "a defendant, subsequent to the federal sentence resulting in

supervision, has been sentenced for an offense that is not the basis of the violation proceeding." The other ground relied upon by the district court was Application Note 4 to the same section, which states that "[w]here the original sentence was the result of a downward departure (*e.g.*, as a reward for substantial assistance), ... an upward departure may be warranted." Given Cawley's intervening burglary conviction and the district court's downward departure for substantial assistance at his initial sentencing, Cawley clearly falls within the literal terms of both of these Application Notes.

Cawley contends, however, that the district court engaged in impermissible double counting when it considered the burglary at resentencing. Although as a general matter a defendant cannot be punished for the same conduct twice, "double counting is legitimate where a single act is relevant to two dimensions of the Guidelines analysis." *United States v. Campbell*, 967 F.2d 20, 25 (2d Cir. 1992). *See also United States v. Rappaport*, 999 F.2d 57, 60–61 (2d Cir.1993) (planning and leading are disparate aspects of criminal conduct); *United States v. Marsh*, 955 F.2d 170, 171 (2d Cir.1992) (enhancements are not duplicative where they reflect different facets of defendant's conduct). Challenges based on alleged double counting typically arise where the same conduct underlies (1) multiple enhancements to a defendant's offense level or (2) both an enhancement to offense level and an increase in criminal history. *See, e.g., United States v. Blakney*, 941 F.2d 114, 116–18 (2d Cir.1991).

By contrast, in the case before us, Cawley's initial sentence was not "enhanced" because of the pending state burglary charges. Neither Cawley's base offense level nor his criminal history category was increased because of his burglary arrest. Rather, the district court declined to grant Cawley full credit for substantial assistance or credit for acceptance of responsibility, decisions vested solely within its discretion. All that happened was that Cawley was denied a reduction in his sentence based in part on his arrest for burglary.

Moreover, the district court noted that it had contemplated departing upward based on the facts of Cawley's firearms offense, but elected not to do so based on its belief that Cawley faced a long state term of imprisonment if convicted on the burglary offense. The court explained:

> [W]ere it not for the fact that you face 15 years to life in the state court after this sentence, I would depart much higher upward and I would give you a much stiffer sentence based on the conduct involved here.

Furthermore, at resentencing, the court acknowledged that it was unaware of the full extent of Cawley's evident lack of remorse, stating:

> I was not aware of the full extent of what I would call the complete lack of remorse reflected in the [burglary] activity, and so I do believe that this section presents a completely independent basis for an upward departure.

In short, the record is clear that Cawley's initial sentence was not enhanced based on his intervening state burglary arrest. Instead, the burglary conduct was relevant to disparate aspects of the Guidelines analysis. Accordingly, although the district court did consider Cawley's burglary at multiple stages of sentencing, we conclude that the court did not engage in impermissible double counting.

## CONCLUSION

We have examined all of Cawley's arguments and find them to be without merit. Based on the foregoing, the judgment of the district court is AFFIRMED.