**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

SID EDWARD WILLIS, JR.,
*Defendant-Appellant*.

No. 13-30376

D.C. No.
3:12-cr-00292-BR-1

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

SID EDWARD WILLIS, JR.,
*Defendant-Appellant*.

No. 13-30377

D.C. No.
3:02-cr-00120-BR-1

OPINION

Appeal from the United States District Court
for the District of Oregon
Anna J. Brown, District Judge, Presiding

Argued and Submitted
March 4, 2015—Portland, Oregon

Filed July 29, 2015

Before: Raymond C. Fisher, Richard A. Paez,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

**SUMMARY**[*]

**Criminal Law**

The panel vacated a sentence for a violation of supervised release, and remanded for further proceedings, in a case in which the defendant, who admitted that his conduct constituted the state felony offense of unlawful use of a weapon under section 166.220(1)(a) of the Oregon Revised Statutes, argued that a violation of § 166.220(1)(a) is not categorically a "crime of violence," for purposes of U.S.S.G. § 7B1.1, and therefore not a Grade A violation.

The panel held that before a district court concludes that a defendant committed a Grade A violation of supervised release by engaging in conduct constituting a felony offense that is a crime of violence, it must take the following steps. First, it must determine by a preponderance of the evidence that the defendant's conduct constituted a federal, state, or local offense. It must then use the categorical approach set forth in *Taylor v. United States*, 495 U.S. 575, 600–02 (1990), to determine whether that offense is a categorical match to the federal generic offense of a "crime of violence." If the federal, state, or local statute criminalizes more conduct than

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the federal generic offense, the court may consider whether the statute is divisible, *Descamps v. United States*, 133 S. Ct. 2276, 2283–85 (2013), and whether the offense the defendant committed qualifies as a crime of violence. If the defendant's conduct constitutes an offense that is a crime of violence, then the court may conclude that the defendant committed a Grade A violation of supervised release. *See* U.S.S.G. § 7B1.1(a)(1)(A)(i) & cmt. n.1.

Because the district court in this case did not specify which of two offenses – attempt or possession – in a divisible statute, § 166.220(1)(a), the defendant's conduct constituted, and one of the two offenses – possession – may not be a crime of violence in light of the Supreme Court's decision in *Johnson v. United States*, No. 13-7120 (U.S. June 26, 2015), the panel vacated his sentence and remanded for further proceedings.

The panel noted that because resolution of the issue may prove unnecessary to the ultimate disposition of the case, it need not resolve whether the due process concerns that led *Johnson* to invalidate the residual clause in the Armed Career Criminal Act are equally applicable to the residual clause in U.S.S.G. § 4B1.2(a).

---

**COUNSEL**

Tonia L. Moro (argued), Medford, Oregon, for Defendant-Appellant.

Kelly A. Zusman (argued), Appellate Chief, Assistant United States Attorney; S. Amanda Marshall, United States Attorney, Portland, Oregon, for Plaintiff-Appellee.

**OPINION**

IKUTA, Circuit Judge:

Sid Willis, Jr. challenges his 60-month sentence for violating the conditions of his supervised release. *See* 18 U.S.C. § 3583(e)(3). Specifically, he argues that the district court plainly erred in calculating the Sentencing Guidelines range by determining that Willis committed a Grade A violation of his supervised release because his conduct did not constitute a felony offense that is a "crime of violence." *See* U.S.S.G. § 7B1.1(a)(1). We have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. We hold that before a district court concludes that a defendant committed a Grade A violation of supervised release by engaging in conduct constituting a felony offense that is a crime of violence, it must take the following steps. First, it must determine by a preponderance of the evidence that the defendant's conduct constituted a federal, state, or local offense. *See* 18 U.S.C. § 3583(d), (e)(3). It must then use the categorical approach set forth in *Taylor v. United States*, 495 U.S. 575, 600–02 (1990), to determine whether that offense is a categorical match to the federal generic offense of a "crime of violence." If the federal, state, or local statute criminalizes more conduct than the federal generic offense, the court may consider whether the statute is divisible, *Descamps v. United States*, 133 S. Ct. 2276, 2283–85 (2013), and whether the offense the defendant committed qualifies as a crime of violence. If the defendant's conduct constitutes an offense that is a crime of violence, then the court may conclude that the defendant committed a Grade A violation of supervised release. *See* U.S.S.G. § 7B1.1(a)(1)(A)(i) & cmt. n.1. Because the district court in this case did not specify which of two offenses in a divisible statute Willis's

conduct constituted, and one of the two offenses may not be a crime of violence in light of the Supreme Court's recent decision in *Johnson v. United States*, No. 13-7120 (U.S. June 26, 2015), we vacate his sentence and remand for further proceedings.[1]

I

Before discussing Willis's challenge to the district court's ruling, it is necessary to understand the federal framework for calculating a sentence for a violation of supervised release conditions.

A court may "revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release" if the court "finds by a preponderance of the evidence that the defendant violated a condition" of release. 18 U.S.C. § 3583(e)(3). A court must order, as a condition of supervised release, "that the defendant not commit another Federal, State, or local crime during the term of supervision." *Id.* § 3583(d). "A violation of this condition may be charged whether or not the defendant has been the subject of a separate federal, state, or local prosecution for such conduct." U.S.S.G. § 7B1.1 cmt. n.1.

When sentencing a defendant for violating a condition of supervised release, the district court "must determine the applicable advisory sentencing range under the Guidelines." *United States v. Denton*, 611 F.3d 646, 651 (9th Cir. 2010).

---

[1] In light of this conclusion, we need not resolve Willis's remaining challenges to his sentence. We resolve his challenge to his felon-in-possession-of-a-firearm conviction in a concurrently filed memorandum disposition. *United States v. Willis*, __ F. App'x __ (9th Cir. 2015).

"[F]ailure to calculate the correct advisory range constitutes procedural error." *Id.* There are three grades of supervised release violations: A, B, and C. U.S.S.G. § 7B1.1(a). A Grade A violation is defined in part as "conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment exceeding one year that (i) is a crime of violence . . . ."[2] *Id.* § 7B1.1(a)(1)(A)(i). A "crime of violence" is defined as any state or federal felony offense that "(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id.* § 4B1.2(a); *see also id.* § 7B1.1 cmt. n.2 (stating that "[c]rime of violence" is defined in § 4B1.2(a) of the Guidelines). The grade of a supervised release violation "is to be based on the defendant's actual conduct," rather than "the conduct that is the subject of criminal charges or of which the defendant is convicted in a criminal proceeding." *Id.* § 7B1.1 cmt. n.1.

A court must revoke a defendant's term of supervised release if it finds a Grade A or B violation. *Id.* § 7B1.3(a)(1). The Guidelines provide for a range of 51 to 63 months of imprisonment upon revocation of supervised release if the

---

[2] In full, § 7B1.1(a)(1) defines a Grade A violation as follows:

> [C]onduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device of a type described in 26 U.S.C. § 5845(a); or (B) any other federal, state, or local offense punishable by a term of imprisonment exceeding twenty years.

defendant (1) committed a Grade A violation, (2) was on supervised release as a result of a sentence for a Class A felony, and (3) had a criminal history category of VI. *Id.* § 7B1.4(a). The Guidelines provide a range of 21 to 27 months for a Grade B violation by a defendant with a criminal history category of VI. *Id.* Notwithstanding the Guidelines, a defendant whose term of supervised release is revoked "may not be required to serve on any such revocation more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony." 18 U.S.C. § 3583(e)(3).

## II

We now turn to the facts of this case. According to the evidence introduced at a suppression hearing, Greg Morris and his girlfriend drove to the Plaid Pantry market on the night of May 24, 2012. When Morris left the store, he was approached by two men. One man, wearing a black hoodie, pulled a handgun from his side pocket and pointed it at Morris's chest. He asked Morris why he was "mugging" him (i.e., giving him a strange look), and threatened him with the gun. The armed man told Morris: "You can't be mugging me. I'll kill you. I'm a gangsta." After threatening to kill Morris, the man demanded that Morris drive him to Southeast 102nd Street. Morris was able to get away with his girlfriend, and called 911.[3] When officers arrived on the scene, Willis attempted to escape, but he was ultimately detained. After locating Morris about a block from where Willis was detained, a police officer drove Morris closer to the area

---

[3] We grant Willis's unopposed motion to supplement the record on appeal with a transcript of the 911 dispatch audio recording played at the suppression hearing.

where other officers had detained Willis. Morris positively identified Willis as the man who threatened him with a gun, saying "I guarantee that's the guy." An officer who reviewed the surveillance video footage at the Plaid Pantry testified that the video showed Willis pointing his gun at Morris, as Morris had reported.

Based on Willis's conduct at the Plaid Pantry, he was indicted for being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1) (case number 3:12-cr-00292). Because Willis was on federal supervised release due to a previous conviction for possession with intent to distribute five grams or more of cocaine base (case number 3:02-cr-00120), he also faced revocation of his supervised release.

In the felon-in-possession case, Willis moved to suppress all evidence against him. After holding an evidentiary hearing, the district court denied the motion. Willis then pleaded guilty to the charge of felon in possession of a firearm, and admitted that the criminal firearm conduct also constituted a violation of his federal supervised release. In the plea agreement, the government calculated that Willis's base offense level under § 4B1.4(b)(3)(A) of the Sentencing Guidelines was 34, based on the government's belief that Willis had committed a state crime of violence, "to-wit: the state crime of Unlawful Use of a Weapon, in violation of ORS 166.220." During the plea colloquy, the district court advised Willis that the government believed that he had committed a crime of violence under state law and that he had a right to challenge the government's position at sentencing.

On December 23, 2013, the district court held a combined change of plea and sentencing hearing on the supervised release violation, as well as a sentencing hearing on the felon-

in-possession conviction. The court sentenced Willis to the mandatory minimum of 180 months of imprisonment for his felon-in-possession-of-a-firearm conviction. For the supervised release violation, the district court found, by a preponderance of the evidence, that Willis had violated his supervised release by committing several state law offenses, including "the state law offense of unlawful use of a weapon." Accordingly, the court adopted the probation office's recommendation that Willis's criminal firearm conduct was a Grade A violation under § 7B1.1(a)(1) of the Sentencing Guidelines, and sentenced Willis to the statutory maximum of 60 months of imprisonment. Willis did not object to the sentences imposed. As a result, the district court had no occasion to explain the reasoning behind its determination that Willis's conduct constituted a Grade A violation of his supervised release.

## III

On appeal, Willis argues that the district court procedurally erred in imposing a 60-month sentence for the supervised release violation. Willis admits that his conduct constituted the state felony offense of unlawful use of a weapon under section 166.220(1)(a) of the Oregon Revised Statutes.[4] But Willis argues that a violation of section

---

[4] Section 166.220 of the Oregon Revised Statutes provides:

Unlawful use of weapon

(1) A person commits the crime of unlawful use of a weapon if the person:

(a) Attempts to use unlawfully against another, or carries or possesses with intent to use unlawfully

166.220(1)(a) is not categorically a "crime of violence," for purposes of § 7B1.1 of the Sentencing Guidelines, and therefore not a Grade A violation. *See* U.S.S.G. § 7B1.1(a)(1). Accordingly, he argues, the district court's calculation of the Guidelines range was incorrect because it was based on the erroneous determination that his criminal firearm conduct constituted a Grade A violation of supervised release.

A

Willis's argument raises a question of first impression in our circuit: how to determine whether uncharged conduct that comprises a criminal offense constitutes a "crime of violence" for purposes of a supervised release revocation. We have a well-established procedure for determining whether a prior conviction constitutes a crime of violence for purposes of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924, and the Immigration and Nationality Act (INA), *see* 8 U.S.C. § 1101(a)(43)(F). In making these determinations, we use the categorical approach set forth in *Taylor*, 495 U.S. at 600–02. *See, e.g.*, *Rodriguez-Castellon*

---

against another, any dangerous or deadly weapon as defined in ORS 161.015 (General definitions); or

(b) Intentionally discharges a firearm, blowgun, bow and arrow, crossbow or explosive device within the city limits of any city or within residential areas within urban growth boundaries at or in the direction of any person, building, structure or vehicle within the range of the weapon without having legal authority for such discharge. . . .

(3) Unlawful use of a weapon is a Class C felony.

*v. Holder*, 733 F.3d 847, 852–53 (9th Cir. 2013); *United States v. Mayer*, 560 F.3d 948, 958–59 (9th Cir. 2009).

But there is a critical distinction between the supervised release context and the ACCA or INA context. Under ACCA and INA, a court is to determine whether a prior *conviction* is a "crime of violence." *See Descamps*, 133 S. Ct. at 2283; *Rodriguez-Castellon*, 733 F.3d at 852–53. In making that determination, a court must "compare the elements of the statute of conviction with a federal definition of the crime to determine whether conduct proscribed by the statute is broader than the generic federal definition." *Rodriguez-Castellon*, 733 F.3d at 853 (internal quotation marks omitted). The crime of conviction is categorically a "crime of violence" only if "the full range of conduct covered by the statute falls within the meaning of that term." *United States v. Espinoza-Morales*, 621 F.3d 1141, 1144 (9th Cir. 2010) (internal quotation marks omitted). We may not look "to the particular facts underlying those convictions." *Descamps*, 133 S. Ct. at 2283 (internal quotation marks omitted).

In the supervised release context, by contrast, there need not be a prior conviction. Rather, after considering the defendant's conduct, the court may revoke the defendant's supervised release if the defendant's conduct constituted "another federal, state, or local crime" while on supervised release, "whether or not the defendant has been the subject of a separate federal, state, or local prosecution for such conduct." U.S.S.G. § 7B1.1 cmt. n.1. Further, "the grade of the violation is to be based on the defendant's actual conduct." *Id.*

Nevertheless, we conclude that the *Taylor* categorical approach applies in the supervised release context. In the

supervised release context, a court must find by a preponderance of the evidence that the defendant's conduct violated a condition of supervised release, 18 U.S.C. § 3583(e)(3), whether or not the defendant has been separately prosecuted for the conduct, U.S.S.G. § 7B1.1 cmt. n.1. "[A] mandatory condition of . . . supervised release is that the defendant not commit another federal, state, or local crime." *Id.* When the defendant is charged with violating that mandatory condition, the court must therefore take the following steps: (1) identify the "federal, state, or local crime" at issue, and (2) find by a preponderance of the evidence that the defendant's conduct constituted such an offense. *See, e.g.*, *United States v. Daniel*, 209 F.3d 1091, 1094 (9th Cir. 2000).

The same two steps are involved in determining whether the defendant's conduct amounted to a Grade A violation. Because a Grade A violation is defined as "conduct constituting a federal, state, or local offense" that meets certain criteria, U.S.S.G. § 7B1.1(a)(1), the court must: (1) determine that the defendant's conduct constituted "a federal, state, or local offense," and (2) determine if such an offense meets the specified criteria. For § 7B1.1(a)(1)(A)(i), the applicable criteria are that the offense is "punishable by a term of imprisonment exceeding one year" and "is a crime of violence."

As part of its analysis of the second prong, as defined in § 7B1.1(a)(1)(A)(i), the court must determine whether the applicable federal, state, or local offense (as opposed to the defendant's conduct that constituted such an offense) is a crime of violence. This determination is substantially similar to the determination a court must make under the ACCA and INA in analyzing whether a prior offense constitutes a

generic federal crime of violence. Although in the ACCA and INA contexts, the court identifies the statutory offense for which the defendant was *convicted*, while in the supervised release context, the court may need to identify a statutory offense for which the defendant *could have been* convicted, the analysis required to determine whether the offense at issue qualifies as a federal generic crime of violence is the same. Because we use the *Taylor* approach to make this determination in the ACCA and INA contexts, and there is no material distinction between those contexts and the supervised release context for purposes of determining whether the offense is a crime of violence, we conclude that the familiar *Taylor* approach applies in this context as well.[5]

---

[5] We disagree, at least in part, with both the Third and Second Circuits, which have taken different approaches to this issue. *See United States v. Carter*, 730 F.3d 187 (3d Cir. 2013); *United States v. Cawley*, 48 F.3d 90 (2d Cir. 1995). The Second Circuit's approach, which requires a court to compare the defendant's actual conduct to the federal definition of the crime, rather than compare the elements of the offense the defendant committed to the federal definition, *see Cawley*, 48 F.3d at 93, is contrary to the Guidelines' requirement that the defendant's conduct constitute a federal, state, or local offense that is a crime of violence, *see* U.S.S.G. § 7B1.1(a)(1)(A)(i); *see also Taylor*, 495 U.S. at 600–02. We find more agreement with the Third Circuit. *See Carter*, 730 F.3d at 192. We agree that in determining whether the defendant has committed a crime of violence for purposes of § 7B1.1(a)(1)(A)(i), a court must identify the particular crime for which the defendant was responsible, and determine whether that crime, rather than the defendant's conduct, contains an "element of force." *Id.* at 192–93. We also agree that in the supervised release context, a court must look at "a defendant's actual conduct in determining whether they have broken the law and thus the terms of their supervised release." *Id.* at 192. But we disagree with the Third Circuit's broad statement that "the categorical approach is necessarily not applicable in the revocation context." *Id.* In our view, a court must use this approach to determine if the particular crime identified by the court qualifies as a "crime of violence." *See Taylor*, 495 U.S. at 600–02;

There is, however, another important distinction between the supervised release context and the ACCA and INA contexts. In the supervised release context, the court is responsible for determining whether the defendant's uncharged conduct constitutes a particular statutory offense, and only then applying the separate *Taylor* analysis. *See* 18 U.S.C. § 3583(e)(3). Accordingly, where a statute is divisible and "lists multiple, alternative elements, and so effectively creates several different . . . crimes," *Descamps*, 133 S. Ct. at 2285 (alteration in original) (internal quotation marks omitted), the court may determine that the defendant's uncharged conduct constitutes one of those multiple crimes. In other words, a court may determine whether the defendant's conduct constituted "a particular substantive offense contained within the disjunctively worded statute," *see Rendon v. Holder*, 764 F.3d 1077, 1086 (9th Cir. 2014), that constitutes a crime of violence. In the ACCA and INA contexts, by contrast, a court cannot consider a defendant's conduct in order to determine whether the defendant was convicted of an alternate crime that constitutes a crime of violence. *Descamps*, 133 S. Ct. at 2283. Instead, a court must look to "certain judicial records to determine whether the defendant was necessarily convicted of the elements of a crime listed in a divisible statute that is a federal generic offense." *Rodriguez-Castellon*, 733 F.3d at 853.

In sum, in a supervised release revocation case, a district court must determine by a preponderance of the evidence that the defendant's conduct constituted a federal, state, or local offense. *See* U.S.S.G. § 7B1.1(a)(1). After identifying the statutory offense, the court should use the *Taylor* categorical approach to determine whether that offense criminalizes the

U.S.S.G. § 7B1.1(a)(1)(A)(i).

same or less conduct than the federal generic offense of a "crime of violence," and is therefore a categorical match. *See Rodriguez-Castellon*, 733 F.3d at 853. If it is, then the court can conclude that the defendant committed a Grade A violation of supervised release. If the statutory offense criminalizes more conduct than the federal generic offense, the court should consider whether the statute is divisible and contains "one statutory phrase corresponding to the generic crime and another not." *Descamps*, 133 S. Ct. at 2286. If the statutory offense is divisible, the district court should specify which of the multiple offenses in the statute the defendant's conduct constituted. The court must then determine whether the specific offense corresponding to the defendant's conduct is a categorical match to the federal generic offense of "crime of violence." *See id.* at 2283–85. Only if there is such a match can the court conclude that the defendant committed a Grade A violation of supervised release.[6] *See* U.S.S.G. § 7B1.1(a)(1)(A)(i).

## B

We now apply this approach to determine whether the district court erred in concluding that Willis's conduct constituted a Grade A violation. Because Willis did not object to the sentence imposed, we review this determination

---

[6] Although we describe the sequence of analysis typically used in the ACCA and INA contexts, *see, e.g.*, *Rendon*, 764 F.3d at 1082–84, we note that nothing in the Sentencing Guidelines or our case law requires this sequence in the supervised release revocation context. Accordingly, a district court considering a supervised release revocation may instead first determine that the criminal statute at issue is divisible, next determine that the defendant's conduct constitutes one of the multiple offenses included in the statute, and then consider whether that specific offense constitutes a crime of violence.

for plain error. *See United States v. Hammons*, 558 F.3d 1100, 1103 (9th Cir. 2009). "Relief for plain error is available if there has been (1) error; (2) that was plain; (3) that affected substantial rights; and (4) that seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Gonzalez Becerra*, 784 F.3d 514, 518 (9th Cir. 2015) (internal quotation marks omitted).

To satisfy § 7B1.1(a)(1)(A)(i), Willis's conduct must constitute a crime, and that crime must be a crime of violence.[7] The district court in this case determined by a preponderance of the evidence that Willis's conduct constituted the state offense of unlawful use of a weapon in violation of section 166.220(1)(a) of the Oregon Revised Statutes. In reaching this conclusion, the district court relied on the evidence adduced at the suppression hearing, which showed that Willis pointed a gun at Morris and threatened to kill him.[8]

We next apply the *Taylor* approach to determine whether this state offense is a crime of violence. *See* U.S.S.G. § 7B1.1(a)(1)(A)(i). A person violates section 166.220(1)(a) if the person "[1] [a]ttempts to use unlawfully against

---

[7] The parties do not dispute that a violation of section 166.220(1)(a) of the Oregon Revised Statutes is punishable by a term of imprisonment exceeding one year. A violation of section 166.220(1) is a Class C felony, Or. Rev. Stat. § 166.220(3), and the maximum prison term for a Class C felony is five years, Or. Rev. Stat. § 161.605(3).

[8] Willis does not challenge the district court's determination that his conduct constituted the state offense of unlawful use of a weapon in violation of section 166.220(1)(a), nor does he challenge the court's reliance on the evidence adduced at the suppression hearing.

another, or [2] carries or possesses with intent to use unlawfully against another, any dangerous or deadly weapon as defined in ORS 161.015." Or. Rev. Stat. § 166.220(1)(a). The district court apparently assumed section 166.220(1)(a) is categorically a crime of violence and accordingly did not conduct a divisibility analysis. For reasons explained below, before determining whether section 166.220(1)(a) is categorically a crime of violence, we think it prudent to first determine whether it is divisible  We conclude it is. *See Descamps*, 133 S. Ct. at 2285. The statute is written in the disjunctive, and under Oregon law, it "presents alternative ways in which a person can commit the crime: by attempting to use a deadly weapon unlawfully, or by carrying or possessing a deadly weapon with intent to use it unlawfully." *State v. Alvarez*, 246 P.3d 26, 29 (Or. Ct. App. 2010). In other words, section 166.220(1)(a) effectively creates two different crimes, each with a distinct set of elements: (1) attempting to use a deadly weapon unlawfully against another (the "attempt offense"), and (2) carrying or possessing a deadly weapon with intent to use it unlawfully (the "possession offense").[9] *See id.*

Because the statute is divisible, we consider whether each offense constitutes a crime of violence under § 4B1.2(a) of the Sentencing Guidelines. Turning first to the attempt offense under section 166.220(1)(a), we conclude it constitutes a crime of violence as defined in § 4B1.2(a)(1) of

---

[9] The fact that a statute is written in the disjunctive "alone cannot end the divisibility inquiry"; rather, we must determine whether the statute "contains multiple alternative *elements*, as opposed to multiple alternative *means*." *See Rendon*, 764 F.3d at 1086. Where, as here, a state court interprets a disjunctive statute as creating different crimes, we may conclude that the statute is divisible. *See id.* at 1088–89 & n.13.

the Sentencing Guidelines. Section 166.220(1)(a) prohibits "[a]ttempts to use [any dangerous or deadly weapon] unlawfully against another." Oregon defines "use" as employing a weapon to inflict harm or injury, or to threaten immediate harm or injury. *Ziska*, 334 P.3d at 970. Accordingly, a person who commits an attempt offense under section 166.220(1)(a) necessarily attempts to employ a weapon to inflict harm or injury or to threaten immediate harm or injury to another. Section 166.220(1)(a) therefore "has as an element the use, attempted use, or threatened use of physical force against the person of another." *See* U.S.S.G. § 4B1.2(a)(1); *see also Rosales-Rosales v. Ashcroft*, 347 F.3d 714, 717 (9th Cir. 2003) (holding that a statute which prohibits threats to commit a crime that "will result in death or great bodily injury to another person . . . has as an element the . . . threatened use of physical force against the person or property of another" (second alteration in original) (internal quotation marks omitted)).

We next consider whether the possession offense under section 166.220(1)(a) constitutes a crime of violence as defined in § 4B1.2(a) of the Sentencing Guidelines. The elements of the possession offense are "(1) carrying or possessing; (2) a dangerous or deadly weapon; (3) with intent to use it unlawfully; (4) against another." *Alvarez*, 246 P.3d at 29. On its face, the possession offense does not include as an element "the use, attempted use, or threatened use of physical force against the person of another." *See* U.S.S.G. § 4B1.2(a)(1). It therefore constitutes a "crime of violence" only if it falls within the residual clause of § 4B1.2(a), which defines such a crime as one that "otherwise involves conduct that presents a serious potential risk of physical injury to another." *See id.* § 4B1.2(a)(2).

It is an open question, however, whether this residual clause remains valid in light of *Johnson*, which was decided while this appeal was pending. In *Johnson*, the Supreme Court considered the term "violent felony" in ACCA, No. 13-7120, slip op. at 1–2, which is defined as a felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another; or . . . is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B). The Court focused on the "or otherwise" clause (or "residual clause"), and concluded that this portion of the definition of "violent felony" was unconstitutionally vague. *Johnson*, No. 13-7120, slip op. at 2–5. According to the Court, increasing a defendant's sentence under this residual clause denied defendants due process of law because "the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges." *Id.* at 5. The Court therefore invalidated it. *Id.* at 15.

Like "violent felony" in ACCA, "crime of violence" in § 4B1.2(a)(2) of the Sentencing Guidelines is defined as including an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another." We make no distinction between "violent felony" in ACCA and "crime of violence" in § 4B1.2(a)(2) for purposes of interpreting the residual clauses. *See United States v. Spencer*, 724 F.3d 1133, 1138 (9th Cir. 2013). But we have not yet considered whether the due process concerns that led *Johnson* to invalidate the ACCA residual clause as void for vagueness are equally applicable to the Sentencing Guidelines.

We need not resolve this issue to dispose of this appeal. The district court did not undertake the divisibility analysis, and therefore did not state whether Willis's uncharged conduct constituted the attempt offense, the possession offense, or both offenses under section 166.220(1)(a).[10] Rather than attempt to divine the district court's conclusion based on the evidence in the record and resolve issues that may prove unnecessary to the ultimate disposition of the case, we think the better course is to remand to the district court to determine whether Willis's conduct constituted the attempt or possession offense, or whether his conduct otherwise constituted a Grade A violation, and undertake further proceedings as necessary. *Cf. Carter*, 730 F.3d at 192–93 (declining "to speculate which federal or state offense the [district court] believed had been committed"). We therefore vacate Willis's sentence and remand to the district court to

---

[10] The government argues that we have already determined that the Oregon crime of unlawful use of a weapon in violation of section 166.220(1)(a) is categorically a crime of violence and therefore it was unnecessary for the district court to specify whether Willis's conduct constituted the attempt or possession offense. Even assuming the cases the government cites in support of this argument remain good law after *Johnson*, *see, e.g.*, *United States v. Terry-Crespo*, 356 F.3d 1170, 1178–79 (9th Cir. 2004), we would reject the argument because those cases address only Oregon Revised Statute section 166.220(1)(b); they do not address Oregon Revised Statute section 166.220(1)(a), which has entirely different elements than section 166.220(1)(b). *Compare* Or. Rev. Stat. § 166.220(1)(a) (prohibiting a person from attempting "to use unlawfully against another, or carr[ying] or possess[ing] with intent to use unlawfully against another, any dangerous or deadly weapon"), *with id.* § 166.220(1)(b) (prohibiting a person from "intentionally discharg[ing] a firearm . . . within the city limits of any city or within residential areas . . . at or in the direction of any person, building, structure or vehicle . . . ").

conduct further sentencing proceedings consistent with this opinion.[11]

**VACATED AND REMANDED.**

---

[11] The government argued for the first time at oral argument that Willis's conduct constituting the federal crime of felon in possession of a firearm in violation of 18 U.S.C. § 922(g) was a Grade A violation of his supervised release because it is "punishable by a term of imprisonment exceeding twenty years." *See* U.S.S.G. § 7B1.1(a)(1)(B). The government waived this argument by not raising it in its answering brief. *See United States v. McEnry*, 659 F.3d 893, 902 (9th Cir. 2011).