# United States Court of Appeals
## For the First Circuit

No. 03-2140

UNITED STATES OF AMERICA,

Appellee,

v.

JIMMY TAVERAS, f/k/a JIMMY TRAVERAS,

Defendant, Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge]

Before

Torruella, Lynch, and Lipez, Circuit Judges.

Dawn E. Caradonna, with whom The Law Office of Dawn E. Caradonna was on brief, for Appellant.

Donald A. Feith, with whom Thomas P. Colantuono, U.S. Attorney, and Peter E. Papps, First Assistant U.S. Attorney, were on brief, for Appellee.

August 17, 2004

**LIPEZ**, **Circuit Judge**.  Jimmy Taveras challenges the district court's revocation of his supervised release without giving him the opportunity to confront the complaining witness whose account of an alleged violation of state law was the basis of the court's revocation decision.  Instead, the court relied on Taveras's probation officer to present a hearsay account of the alleged violation.  Concluding that the reliance by the district court on this second-hand account violated Taveras's confrontation rights under Rule 32.1(b)(2)(C) of the Federal Rules of Criminal Procedure, we vacate the revocation of his supervised release.

## I.

We draw our recitation of the facts from the district court record.  On November 2, 1998, Taveras pleaded guilty to one count of conspiracy to distribute and to possess with intent to distribute cocaine and heroin in violation of 21 U.S.C. § 846 and distribution of heroin in violation of 21 U.S.C. § 841.  He was sentenced to thirty-seven months of imprisonment and four years of supervised release.  The sentencing court imposed a number of conditions of supervised release, including a prohibition on his possession of a firearm and a requirement that Taveras "not commit another federal, state, or local crime."

Approximately three weeks after he was released from this first period of incarceration, Taveras was arrested again and was charged with witness tampering for verbally assaulting a government

witness who had testified against a Massachusetts gang with whom Taveras was allegedly associated. On October 18, 2000, the district court revoked Taveras's supervised release and sentenced him to twelve months and one day of imprisonment and thirty-six months of supervised release. He was released from this second period of incarceration on June 23, 2001, and was arrested again April 25, 2003, this time by the Lawrence, Massachusetts police for assault with a deadly weapon and possession of a firearm without a license. Although the state charges were eventually dismissed because the complaining witness refused to testify, the district court held supervised release revocation proceedings based on this arrest at the request of Taveras's probation officer, Carmen Wallace, on July 29, 2003 and August 8, 2003.[1]

Claiming that the complaining witness could not be found to testify, the Government announced its intention to rely on probation officer Wallace to provide a hearsay account of the alleged assault. Taveras moved for dismissal of the proceedings just before Wallace testified, arguing that the Government violated Fed. R. Crim. P. 26.2[2] (because the government had not given him a

_____

[1]The court suspended the proceedings on July 29 to allow the court and the parties to research the definition of "assault with a deadly weapon" and "possession of a firearm" under Massachusetts law.

[2]Fed. R. Crim. P. 26.2(a) states:

After a witness other than the defendant has testified on direct examination, the court, on motion of a party who

-3-

copy of the statement of the complaining witness in its possession) and Rule 32.1[3] (by not making the complaining witness available for cross-examination). The district court overruled the first objection, noting that Rule 26.2 only applies to witnesses and stating that the complaining witness was not going to be a witness. It overruled the second objection as well, observing that Taveras was free to call the complaining witness to the witness stand if he wanted to examine her but that Rule 32.1 did not require the Government to call a witness simply so that Taveras could cross-examine her.

Wallace took the stand and recounted two conversations that she had with the complaining witness, a woman who identified herself as Elsa Pabon. The first communication was a ten to fifteen minute telephone conversation that occurred on the morning of April 16, 2003. Pabon told her that Taveras, whom she knew

---

did not call the witness, must order an attorney for the government or the defendant and the defendant's attorney to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony.

[3]Taveras mis-spoke during the hearing, claiming that Rule 32.1(a)(2)(D) entitled him to confront adverse witnesses. That provision, which establishes the defendant's rights at a supervised release revocation hearing, was moved to 32.1(b)(2)(C) in 2002 and currently reads: "The person is entitled to . . . an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear."

because he was dating her cousin, had pulled up next to her car on the previous evening and had pointed a black semi-automatic handgun at her. She said that he was upset that Pabon's sister had broken up with Taveras's brother and told Pabon to "tell [her] sister's boyfriend this is what [he has] for him" as he pointed the gun at her. She said that she felt threatened by Taveras and was in fear for her safety. Wallace said that Pabon was highly emotional and that Pabon said that she had been trying to reach Wallace all morning because she knew that Wallace was Taveras's probation officer. Wallace encouraged Pabon to contact the police, and Pabon did so after the end of this phone conversation.

The second conversation occurred when Wallace visited Pabon and her mother at Pabon's home on April 28, 2003. Pabon told Wallace that she was very afraid of Taveras and his family and friends because she knew what they were capable of doing. She had received phone calls from Taveras's brother and Taveras's lawyer on the day that he was arrested, asking why she was pursuing the matter. Although Wallace tried to get a written statement from Pabon, she refused to give one, saying that Wallace could not guarantee her safety or the safety of her children.[4]

After Wallace visited her house, Pabon submitted a written statement to the local prosecutor, saying that the whole

_____

[4]When asked how many children Pabon has, Wallace responded: "I believe she has two or three. I'm not too sure."

matter was a big misunderstanding and that she did not want to pursue any charges against Taveras. Having lost their witness, the Commonwealth dropped its charges. Although Wallace went to Pabon's house to bring her to the federal revocation proceedings, she saw that Pabon's name had been removed from the mailbox and a neighbor said that she did not believe that Pabon lived there any longer.

The Government rested after Wallace presented this account. Taveras did not present any witnesses. However, during his closing argument, he repeated his objection to the court's consideration of Wallace's hearsay testimony.

Noting that Taveras failed to object to Wallace's hearsay testimony while she was on the stand and that the testimony was admissible under the excited utterance exception to the hearsay rule, the court considered Wallace's testimony for the truth of the matter asserted in Pabon's account of her confrontation with Taveras. It found Pabon's story, as delivered by Wallace, to be credible, and found that Taveras had committed the charged crimes of assault and assault with a dangerous weapon. It then revoked his supervised release and sentenced him to 18 months of imprisonment and an additional 12 months of supervised release.[5]

---

[5]Generally, supervised release revocation proceedings follow a two-step process. The court first determines whether the defendant violated his or her conditions of release and then it considers whether that violation merits revocation. See 18 U.S.C. § 3583(e).

As noted, Taveras supported his claim to cross-examine Pabon by invoking Rule 32.1(b)(2)(C), which provides that a defendant is entitled at a revocation hearing to, <u>inter alia</u>, "an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1(b)(2)(C). The district court admitted Wallace's hearsay testimony, rejecting Taveras's Rule 32.1(b)(2)(C) cross-examination claim. Despite the district court's observation that Taveras failed to object to Wallace's hearsay testimony while she was on the stand, Taveras's objections before and after her testimony demonstrate that he did not forfeit this claim below. Accordingly, we review Taveras's argument that the district court should not have admitted the hearsay testimony for abuse of discretion, <u>United States</u> v. <u>Tom</u>, 330 F.3d 83, 92 (1st Cir. 2003), rather than plain error.[6]

In conducting this review, we find some of the history of Rule 32.1 relevant to Taveras's claim of error. The Advisory

---

[6]On appeal, Taveras frames his argument in terms of the requirements of constitutional due process rather than the requirements of Rule 32.1(b)(2)(C). The grounding of Rule 32.1 in constitutional due process (as we explain in the text above) makes our consideration of the rule appropriate on appeal despite the labels used by Taveras. Moreover, we have a strong preference for avoiding constitutional grounds when another ground of decision is available. <u>See</u>, <u>e.g.</u>, <u>Santoni</u> v. <u>Potter</u>, 369 F.3d 594, 598 n.5 (1st Cir. 2004).

Committee Notes accompanying the 1979 addition and the 2002 amendments to Rule 32.1 reveal that the procedural protections established by Rule 32.1(b)(2)(C) were designed to track the due process rights established for parolees in Morrissey v. Brewer, 408 U.S. 471 (1972). See United States v. Correa-Torres, 326 F.3d 18, 22-23 (1st Cir. 2003) (applying Morrissey and Fed. R. Crim. P. 32.1 in the supervised release context). The Morrissey Court held that while "the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations," defendants at these proceedings are still entitled to basic due process protections. 408 U.S. at 480. One of these rights is "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." Id. at 489.

Citing Morrissey and its progeny, the Rules Advisory Committee stated in its 2002 Committee Note that Rule 32.1(b)(2)(C) "recognize[s] that the court should apply a balancing test at the [revocation] hearing itself when considering the releasee's asserted right to cross-examine adverse witnesses. The court is to balance the person's interest in the constitutionally guaranteed right to confrontation against the government's good cause for denying it." An important element of the good cause analysis is

-8-

the reliability of the evidence that the Government seeks to introduce.[7]

In an effort to establish the reliability of Wallace's hearsay testimony, the Government argued that the court could accept it under the excited utterance/spontaneous declaration exception to the hearsay rule. Idaho v. Wright, 497 U.S. 805, 815 (1990) ("Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception."). That exception allows the admission of a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition. See United States v. Bailey, 834 F.2d 218, 227-28 (1st Cir. 1987); Fed. R. Evid. 803(2). "The rationale underlying the 'excited utterance' exception is that excitement suspends the declarant's powers of reflection and fabrication, consequently minimizing the possibility that the utterance will be influenced by self interest and therefore rendered unreliable." United States v. Alexander, 331 F.3d 116, 122 (D.C. Cir. 2003) (citation and internal quotation marks omitted); see also United States v. Joy, 192 F.3d 761, 766 (7th Cir. 1999) ("This exception is premised on the belief that a

---

[7]The Government's burden in producing the witness for cross-examination is also frequently cited as part of the "good cause" analysis. See, e.g., United States v. Zentgraf, 20 F.3d 903, 909 (8th Cir. 1994). Since we conclude that the hearsay testimony was wholly unreliable and prejudicial, we need not consider the government's burden of producing the witness in this case.

person is unlikely to fabricate lies (which presumably takes some deliberate reflection) while his mind is preoccupied with the stress of an exciting event."). The time lapse in most excited utterance cases is usually a few seconds, see, e.g., United States v. Vazquez, 857 F.2d 857, 864 (1st Cir. 1988), or a few minutes, see, e.g., Bailey, 834 F.2d at 228. In extreme circumstances, we have even accepted a delay of a few hours, see United States v. Cruz, 156 F.3d 22, 30 (1st Cir. 1998) (accepting testimony from a woman four hours after the shocking incident based on the assumption that she was still suffering trauma after she was beaten by the defendant).

The delay here extended well beyond the limits established by our excited utterance precedents. The alleged assault occurred on the night of April 15, but Pabon did not call Wallace until the next morning. Furthermore, while Wallace did not testify to the precise time that Pabon called, she did say that the witness had been trying to reach her all morning, suggesting that the two talked late in the morning. Thus, the extended delay in this case was long enough to allow Pabon to reflect on the alleged events of the previous night and possibly to fabricate or alter the story that she related to Wallace. Wallace's hearsay testimony did not meet the requirements of the excited utterance exception to the hearsay rule.

Furthermore, the hearsay testimony presented at the revocation hearing lacked other indicia of reliability. Pabon's statement was neither written nor sworn, see United States v. Comito, 177 F.3d 1166, 1171 (9th Cir. 1999) ("Unsworn verbal allegations are, in general, the least reliable type of hearsay . . . ."), and the Government failed to provide any corroborating evidence to support Pabon's accusation that Taveras pointed a gun at her. Cf. United States v. Pratt, 52 F.3d 671, 675 (7th Cir. 1995) (accepting a police officer's hearsay testimony at a supervised release revocation hearing that was corroborated by written reports and statements of the victims, surveillance photographs, and other physical evidence); United States v. Kindred, 918 F.2d 485, 486-87 (5th Cir. 1990) (accepting hearsay testimony regarding a drug test when the defendant neither contested the allegations of drug use nor the accuracy of the urinalysis); United States v. McCallum, 677 F.2d 1024, 1026-27 (4th Cir. 1982) (accepting written report from a defendant's caseworker at a revocation hearing that was partially corroborated by the defendant's admissions). Moreover, the Government did not provide any background details about Pabon or her relationship with Taveras. This exchange between Taveras and Wallace at trial underscores these deficiencies:

> Q: You don't have any background history with Elsa Pabon; do you?
> A: No, I do not.

> Q: All right. Do you know whether she's got a
> criminal history?
> A: I do not.
> Q: Do you know whether she has a habit of
> lying?
> A: I do not.
> Q: And you also don't know whether there's any
> history between her and the Taveras family,
> any reason for her to lie about these charges?
> A: I do not.

Wallace's involvement with Pabon was limited to a fifteen minute phone conversation and a short personal interview in which Pabon said that she did not wish to pursue charges against Taveras.

Given the unreliable nature of Wallace's hearsay testimony, we conclude that the "interest of justice" did not justify the district court's decision to override Taveras's qualified right to confrontation and that the court abused its discretion by admitting the hearsay testimony. Wallace's testimony was the only evidence presented in support of the Government's case, and the prejudice to Taveras from the absence of confrontation is unmistakable. Rule 32.1(b)(2)(C) mandates the exclusion of such unsupported hearsay under these circumstances. Without the hearsay testimony, there was no case; therefore, we must vacate the district court's judgment.[8]

**Vacated.**

---

[8]Our disposition of this case does not require us to consider the applicability of Crawford v. Washington, 124 S. Ct. 1354 (2004) to supervised release revocation proceedings (an argument made by appellant for the first time at oral argument), nor does it require us to consider Taveras's argument that the government failed to prove all the necessary elements of an assault as that crime is defined under Massachusetts law.