Not for Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

No. 16-1884

UNITED STATES OF AMERICA,

Appellee,

v.

JORGE DEIDA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

Before

Thompson, Stahl, and Kayatta,
Circuit Judges.

Bjorn Lange, Assistant Federal Public Defender, for appellant.

Seth R. Aframe, Assistant United States Attorney, with whom Emily Gray Rice, United States Attorney, was on brief, for appellee.

March 15, 2017

**STAHL**, **Circuit Judge**.    Jorge Deida claims that the district court erroneously permitted the government to present hearsay and prior bad act testimony at his supervised release revocation hearing.  In light of this testimony, the district court determined that Deida had violated the conditions of his supervised release, revoked that release, and sentenced Deida to fourteen months' imprisonment followed by twenty-two months of supervised release.  For the following reasons, we affirm.

## I.

On June 12, 2013, Deida began a five-year term of supervised release after serving a 126-month prison sentence relating to a series of controlled substance offenses.[1]  On March 4, 2016 and April 20, 2016, Deida's probation officer filed successive petitions in the United States District Court for the District of New Hampshire alleging that Deida had assaulted his girlfriend, Jennifer Vanslette, on two separate occasions.  The petition specifically alleged that Deida had repeatedly struck Vanslette in the face during an argument on January 12, 2016, and then forcefully wrapped his hands around her neck in the midst of another altercation on March 3, 2016.  Deida, however, was never charged for the alleged January 12th incident.  The government

---

[1] Deida served only ninety-eight of the 126 months before being released.

- 2 -

dismissed the March 3rd allegation prior to Deida's revocation hearing after he was found not guilty of that assault in a parallel state court proceeding.

Two witnesses testified at Deida's hearing, Vanslette and her family counselor, Rose Brockstedt.[2]   Vanslette first testified that she and Deida lived together in his apartment at the time of the January 12th assault.  As they were getting ready for bed that night, Vanslette asked Deida if she could use their van the following day to attend a family counseling session with her daughter, who at the time lived at an Easter Seals residential treatment facility in Manchester, New Hampshire.  Deida, she said, took issue with her request, "got in [her] face," and began to repeatedly punch her.  Vanslette also said that she did not call the police after the incident because Deida had threatened to kill her if she did.  The next day, Vanslette spoke to Brockstedt during a scheduling call, and told her about the encounter.

Also, in her testimony about the March 3rd incident, Vanslette, over Deida's objection, claimed that he had "put his arms around [her] throat" and threatened to "make [her] daughter motherless."[3]

_____

[2] Because Deida chose not to take the stand at his revocation hearing, the evidence presented to the district court consisted solely of Vanslette's and Brockstedt's testimony.

[3] On cross-examination, Deida's counsel asked Vanslette a series of questions suggesting that, in March 2016, she was angry

- 3 -

Brockstedt took the stand next. She verified that Vanslette called her the day after the alleged January 12th assault to cancel the family counseling session because Deida had "beaten [her] up." Vanslette cried over the phone, and told Brockstedt that "her eye was all bruised and her lip was swollen." Brockstedt also mentioned that Vanslette's face remained bruised when she next saw Vanslette nearly two weeks later.

Brockstedt described what she knew about the March 3rd incident as well. She testified that on that date, Vanslette sent her a text message that read "help." After receiving the text message, Brockstedt called Vanslette, who informed Brockstedt that Deida had "beat[] her up" and that "she was trying to barricade herself in her room." Brockstedt also claimed that she could hear Deida in the background of the call saying that he was going to leave Vanslette's daughter without a mom.[4]

Based on the evidence presented, the district court concluded that the government had proven by a preponderance of the evidence that Deida had committed the misdemeanor offense of simple domestic assault during the January 12th altercation. See N.H.

---

with Deida because she believed he was cheating on her with another woman.

[4] On cross-examination, Brockstedt acknowledged that when she had seen Vanslette and Deida together in the time between the alleged January and March incidents, their behavior was "[c]ordial."

Rev. Stat. Ann. § 631:2-b(I)(a). The court then revoked Deida's supervised release and sentenced him to fourteen months' imprisonment, to be followed by a term of twenty-two months of supervised release.

## II.

On appeal, Deida makes two challenges to the district court's revocation of his supervised release. First, Deida argues that the district court should have excluded Vanslette's and Brockstedt's testimony detailing their telephone conversation about the alleged January 12th assault. Second, he argues that the district court erred in admitting testimony from Vanslette and Brockstedt that, on March 3, 2016, Deida assaulted Vanslette again, choking her and threatening her life.

This court reviews a district court's decision to admit or exclude evidence at a revocation hearing for abuse of discretion. See United States v. Rondeau, 430 F.3d 44, 48 (1st Cir. 2005); United States v. Taveras, 380 F.3d 532, 536 (1st Cir. 2004). Given the nature of the proceedings below, we conclude that the district court did not abuse its discretion by admitting both sets of testimony. See Morrissey v. Brewer, 408 U.S. 471, 489 (1972) (stating that parole revocation proceedings "should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial").

A. The Alleged Telephone Conversation between Vanslette and Brockstedt

Deida first argues that the district court should have excluded all testimony regarding Vanslette and Brockstedt's January 13th telephone conversation because it was insufficiently reliable. Though the evidence presented in revocation proceedings need not be admissible under the Federal Rules of Evidence, U.S.S.G. § 6A1.3(a); Fed. R. Evid. 1101(d)(3), "evidence that does not satisfy those Rules must nonetheless be reliable," United States v. Portalla, 985 F.2d 621, 622 (1st Cir. 1993). Here, Deida claims that Vanslette's and Brockstedt's testimony is unreliable because it consisted of unsworn verbal allegations made the day after the alleged assault which, in most judicial proceedings, would not be admissible under any hearsay exception. While acknowledging that hearsay evidence is often permitted in revocation proceedings, United States v. Marino, 833 F.3d 1, 5 (1st Cir. 2016), Deida claims that it remains relevant whether or not a statement falls outside a "firmly rooted hearsay exception," see Idaho v. Wright, 497 U.S. 805, 815 (1990).

To be sure, a statement's status as hearsay or non-hearsay is an indicator of that statement's reliability. See Taveras, 380 F.3d at 537. Deida overlooks, however, the many other indicia of reliability present here. Even if Vanslette's and Brockstedt's testimony does not qualify under any hearsay

- 6 -

exception, the declarant, Vanslette, took the stand, adopted the statement as her own, and made herself available for cross-examination. Deida stresses that Vanslette was "angry and suspicious" that he was seeing another woman and, therefore, that she had a personal motive to fabricate her statements to Brockstedt, a theory that Deida pursued on cross-examination. See Davis v. Alaska, 415 U.S. 308, 316 (1974) ("Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested."). Moreover, the government appropriately notes that Brockstedt testified that she saw Vanslette about two weeks after the alleged January 12th assault, and stated that Vanslette had injuries to her face consistent with Vanslette and Brockstedt's January 13th conversation. See United States v. Martin, 382 F.3d 840, 846 (8th Cir. 2004) (noting that the government demonstrated the reliability of declarant's statements regarding a sexual assault, in part because other witnesses said they observed injuries consistent with the declarant's description of the sexual assault). Therefore, the district court did not abuse its discretion by admitting testimony about Vanslette's telephone conversation with Brockstedt in the aftermath of the alleged January 12th assault.

B. The Alleged March 3rd Assault

Deida's second argument is that Vanslette and Brockstedt should not have been permitted to testify as to the alleged assault

- 7 -

which occurred at Vanslette and Deida's home on March 3, 2016. While this incident was initially presented by the government in its April 20, 2016 revocation petition as Violation 2, the government dropped this allegation from the petition after Deida had been found not guilty of that assault in parallel state court proceedings. Because he had been acquitted of that charge, and because the government did not rely upon it in arguing that he had violated the terms of his release, Deida argues that the district court's decision to admit Vanslette's and Brockstedt's testimony regarding the alleged March 3rd incident amounted to "prior bad acts" evidence in violation of Federal Rule of Evidence 404(b).

We disagree, for two reasons. First, because the district court cited only the January simple assault as the basis for finding Deida in violation of the terms of his release, and because there was ample evidence supporting Vanslette's version of those events, we need not decide whether the district court abused its discretion in admitting testimony pertaining to the March 3rd incident because any error would be harmless.

Second, and for the sake of completeness, we note that in addition to the previously identified problem of the Federal Rules of Evidence not applying, many courts have permitted the introduction of similar evidence in the context of domestic violence to show intent, motive, and the general nature of the relationship. See, e.g., State v. Brown, 900 A.2d 1155, 1161 (R.I.

- 8 -

2006) (stating that admission of uncharged instances of assault was permissible to show "an escalating pattern of domestic violence tended to establish defendant's intent"); State v. Williams, 9 A.3d 315, 320 (Vt. 2010) (holding prior instances of domestic assault admissible "to show the nature of the parties' relationship and explain what might otherwise appear to be incongruous behavior to a jury, such as remaining with an abusive partner and delaying a report of abuse"); see also United States v. Faulls, 821 F.3d 502, 508-09 (4th Cir. 2016) (reasoning that admission of prior acts of domestic violence was appropriate because evidence was relevant to motive and nature of relationship); Albrecht v. Horn, 485 F.3d 103, 127-28 (3d Cir. 2007) (stating that evidence of past instances of domestic abuse was admitted for the legitimate purpose of showing the defendant's motive). In other words, because the evidence in this case was not admitted "to prove the character of a person in order to show action in conformity therewith," Fed. R. Evid. 404(b), but was admitted to prove motive, intent, and the nature of the relationship between Deida and Vanslette, there would have been no violation of the Federal Rules even if they did apply.

## III.

For these reasons, the district court's judgment is AFFIRMED.