# United States Court of Appeals
## For the First Circuit

No. 18-1388

UNITED STATES OF AMERICA,

Appellee,

v.

ANTHONY J. COLÓN-MALDONADO, a/k/a/ Guelo,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Torruella, Thompson, Kayatta,
Circuit Judges.

Andrew S. McCutcheon, Assistant Federal Public Defender, with whom Eric A. Vos, Federal Public Defender, Vivianne M. Marrero-Torres, Assistant Federal Public Defender, Supervisor, Appeals Section, and Franco L. Pérez-Redondo, Research & Writing Specialist, were on brief, for appellant.
Thomas F. Klumper, Assistant United States Attorney, Senior Appellate Counsel, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

March 6, 2020

**THOMPSON**, **Circuit Judge**.  In early 2017, Anthony Colón-Maldonado completed his sentence for federal drug crimes and began his six-year term of supervised release.  Just six months later, a police complaint charged him on "information and belief" with committing aggravated domestic abuse under Puerto Rico law.  It did not indicate how police got that information, or why they believed Colón committed the offense; after all, in Puerto Rico (like many states), a complaint is just an accusation that starts off a criminal case.  See P.R. Laws Ann. tit. 34, Ap. II, §§ 5, 34.  Colón pled down to a lesser offense.  Nonetheless, based on the complaint, a U.S. district court found that Colón committed the more serious crime — violently so — and sentenced him to thirty months in federal prison for violating the terms of his release.  This was error.  Accordingly, we vacate and remand for resentencing.

## Revocation Primer

Before we dive into the facts, some background.  When imposing a prison sentence, a federal court may impose a term of supervised release — a "form of postconfinement monitoring" during which the defendant must follow a series of conditions designed to help him or her "transition to community life" and to thwart reoffending.  Mont v. United States, 139 S. Ct. 1826, 1833 (2019) (quoting Johnson v. United States, 529 U.S. 694, 697 (2000)); see also United States v. Joseph, 109 F.3d 34, 38–39 (1st Cir. 1997).

- 2 -

As one condition, the court must always order "that the defendant not commit another Federal, State, or local crime during the term of supervision." 18 U.S.C. § 3583(d). If the supervisee breaks this or another condition, the court may (after a hearing) "revoke a term of supervised release[ ] and require the defendant to serve in prison all or part of the term of supervised release authorized by statute" for the crime of conviction. 18 U.S.C. § 3583(e)(3).

The revocation hearing has two stages. See United States v. Morin, 889 F.2d 328, 332 (1st Cir. 1989). First, the government must prove by a preponderance of the evidence (i.e., that it is more likely than not) that the defendant violated the release condition. See United States v. Tanco-Pizarro, 892 F.3d 472, 475 (1st Cir. 2018) (citing 18 U.S.C. § 3583(e)(3)). Then, if the court finds a violation, it must decide whether to modify the defendant's supervised release (for example, it could set harsher conditions) or revoke it and impose more prison time. United States v. Whalen, 82 F.3d 528, 532 (1st Cir. 1996). To guide the sentencing decision, the United States Sentencing Guidelines set three grades of supervised release violations — with the highest, Grade A, reserved for "conduct constituting" a "crime of violence," a "controlled substance offense," or two other types of serious crimes. See U.S.S.G. § 7B1.1(a). The guidelines say that when the defendant commits such a crime, courts should revoke release

- 3 -

and impose a sentence within the highest range listed for the defendant's criminal history category.[1]  Id. §§ 7B1.3, 7B1.4.

To decide if the defendant breached his conditions and (if so) what sentence to impose, the court may "consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial."  Morrissey v. Brewer, 408 U.S. 471, 489 (1972); see also United States v. Rondón-García, 886 F.3d 14, 21 (1st Cir. 2018) ("During a sentencing hearing, neither the Federal Rules of Evidence nor the Sixth Amendment's confrontation clause applies.").  To influence those decisions, however, the evidence must (at minimum) be "reliable." United States v. Portalla, 985 F.2d 621, 622 (1st Cir. 1993); see also United States v. Mills, 710 F.3d 5, 15 (1st Cir. 2013) (explaining that at sentencing, "the court can consider all kinds of relevant information regardless of admissibility at trial (including hearsay that has never been tested by cross-

---

[1] The supervised release statute requires courts to consider this guideline range (among other factors) before revoking release and imposing the sentence.  See 18 U.S.C. § 3583(e) (citing id. § 3553(a)(5)).  The other factors include: the nature and circumstances of the offense, id. § 3553(a)(1); the history and characteristics of the offender, id.; the need for adequate deterrence, id. § 3553(a)(2)(B); the need to protect the public, id. § 3553(a)(2)(C); and the penological needs of the offender, such as the need for special care or treatment, id. § 3553(a)(2)(D).  See Tanco-Pizarro, 892 F.3d at 480 (citing United States v. Vargas-Dávila, 649 F.3d 129, 131 (1st Cir. 2011)).

examination)," but only if "it has 'sufficient indicia of reliability to support its probable accuracy'" (quoting U.S.S.G. § 6A1.3)).

As with other judgment calls, we review the ultimate revocation decision and sentence for "abuse of discretion." United States v. Wright, 812 F.3d 27, 30 (1st Cir. 2016). Along the way, we draw our own legal conclusions (interpreting the Guidelines de novo) and test the court's material factfinding for "clear error." Id.; see also United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir. 2015). If the district court "select[ed] a sentence based on clearly erroneous facts" or "improperly calculat[ed] the Guidelines range," that's a "significant procedural error," United States v. Sayer, 916 F.3d 32, 37 (1st Cir. 2019) (quoting Gall v. United States, 552 U.S. 38, 51 (2007)) — and we reverse unless the government shows the mistake did not affect the sentence, see United States v. Romero-Galindez, 782 F.3d 63, 70 (1st Cir. 2015).

On to this case.

**How We Got Here**

In 2014, Colón was sentenced to seventy months in federal prison and six years of supervised release for his part in a conspiracy to deal drugs near a protected location. See 21 U.S.C. § 841(a)(1). After six months on supervised release, he was arrested again — this time by Puerto Rico police. In a pair of criminal complaints filed in Puerto Rico court, Officer Edmee

Malavé wrote that Colón had assaulted and threatened his then-girlfriend, Jessica Alomar. As a result, he was charged with two domestic violence crimes under Puerto Rico law: aggravated abuse and abuse by threat. See Articles 3.2 and 3.3 of Puerto Rico Domestic Violence Law 54, P.R. Laws Ann. tit. 8, §§ 632, 633.[2] Before long, Colón's probation officer (Nelson Mendoza) had reported the charges to the United States District Court for the District of Puerto Rico and petitioned the court to revoke Colón's supervised release based on the new alleged crimes.

So Colón was brought back to federal court. There, a U.S. magistrate judge held a preliminary revocation hearing — designed to determine whether there's "probable cause to believe that a violation occurred." Fed. R. Crim. P. 32.1(b). Mendoza took the stand as the only witness. He hadn't seen what happened

_____

[2] The root crime of "abuse" under Puerto Rico law is defined as follows:

> Any person who employs physical force or psychological abuse, intimidation, or persecution against his/her [domestic partner] in order to cause physical harm to the person, the property held in esteem by him/her, except that which is privately owned by the offender, or to another person, or to cause serious emotional harm, shall be guilty of a fourth-degree felony in the upper end of the range.

P.R. Laws Ann. tit. 8, § 631. Aggravated abuse criminalizes "abuse" in certain aggravating circumstances, including "when committed against a pregnant woman." P.R. Laws Ann. tit. 8, § 632(i). Abuse by threat is "threaten[ing] to cause harm to [a domestic partner] . . . or to destroy property cherished by the victim." P.R. Laws Ann. tit. 8, § 633.

between Colón and Alomar, but (he testified) he had done a "preliminary investigation," meaning he spoke to Alomar and Malavé over the phone. According to Mendoza, Alomar (who was pregnant with Colón's baby) said that Colón had followed her to a hospital in Guayama or Salinas (Mendoza wasn't sure which, or why Alomar was going there). When they got to the hospital, they argued and Colón "grabbed her by the hair" and "slammed [her] to the ground." On the way down, her head hit the wall.

When Mendoza spoke to Malavé, Malavé had said that Alomar had given him the same basic story. Malavé had rehashed Alomar's account in the criminal complaints, which the government entered in evidence at the preliminary hearing. The first, which charged Colón with aggravated abuse under Article 3.2, read:

> [On or about August 13, 2017 in Salinas, Puerto Rico, Colón] illegally, voluntarily, maliciously, knowingly and with criminal intention, used physical force against Mrs. Jessica Alomar Rodríguez, with whom he lived together five months ago, consisting in [sic] the fact that he grabbed her strongly with his hands by her abdomen to take away her cellular phone; grabbed her strongly by her hair, shook her and she hit the wall and fell to the ground. The victim is pregnant.

The second, charging abuse by threat (Article 3.3), said:

> [On or about August 13, 2017 in Salinas, Puerto Rico, Colón] illegally, voluntarily, maliciously, knowingly and with criminal intention, threatened with bodily injury Mrs. Jessica Alomar Rodríguez, with whom he lived together for five months and did not have any children, but who is pregnant, consisting in [sic] the following: "I'll blow you up, you make me feel like hitting you, you miserable

bitch," feeling [sic] the victim afraid and threatened that defendant may fulfill his threat.

The back of the complaints reflected that after hearing testimony from Malavé and Alomar, a Puerto Rico magistrate judge had found probable cause for the Article 3.2 (aggravated abuse) charge, but not for the Article 3.3 (abuse-by-threat) charge.

Alomar herself gave a sworn written statement to Commonwealth prosecutors, but (said Mendoza) the prosecutors were "not going to relinquish that sworn statement [while] the [Puerto Rico] case [was] ongoing," for some reason. So the federal magistrate judge relied on Mendoza's testimony, along with the two complaints, to find probable cause that Colón committed a new crime and violated his conditions of release. He ordered Colón detained until the final revocation hearing — when a U.S. district judge would decide whether he'd *in fact* committed the violations and whether to revoke his release and send him back to prison. See Fed. R. Crim. P. 32.1(b).

In the meantime, Colón — facing the aggravated abuse and abuse-by-threat charges in Puerto Rico court — pled guilty to a lesser offense: attempted abuse under Article 3.1. See P.R. Laws Ann. tit. 8, § 631. So at the final revocation hearing, Colón admitted that he'd violated Article 3.1 and thus the "no new crimes" condition. But his crime (attempted abuse) was only a Grade B violation, he argued. See U.S.S.G. § 7B1.1(a)(2) (defining

- 8 -

a Grade B violation as "conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year"). First, Abuse didn't qualify as a "crime of violence" under the categorical approach described in Mathis v. United States, 136 S. Ct. 2243, 2248-52 (2016) and Descamps v. United States, 570 U.S. 254, 273-74 (2013) (looking to the elements of the crime as defined in the law, instead of an offender's conduct, to see if it counts). And neither did Aggravated Abuse, for that matter. Second, the court could not "rely on" the complaints to "establish that [he used] physical violence" to commit a violent crime. "So there [was] no factual basis for a finding of a 3.2 violation, or any other criminal conduct that [was] not attempted 3.1 in this case." As a result, he claimed, his guideline range was only 12-18 months in prison.

The district judge disagreed. First, he set aside the "categorical approach," reasoning that he could look to Colón's "actual conduct" to conclude that he committed a "crime of violence" and a Grade A violation. And he found that Colón's "actual conduct was the [crime] charge[d]": "us[ing] physical violence against his pregnant girlfriend" to commit aggravated abuse under Article 3.2(i), which was a "crime of violence" under § 7B1.1(a)(1). To support that finding, over Colón's objection, the court relied on Malavé's two sworn complaints. And that's about it. Neither Mendoza, nor Malavé, nor Alomar testified at

- 9 -

the final revocation hearing.  And the government did not give the district judge a transcript of Mendoza's testimony; it only mentioned that (as noted on the docket and in the U.S. magistrate judge's written order) the magistrate judge had "found probable cause [for the violations] after listening to [Mendoza]" and reviewing the complaints.  If the Commonwealth prosecutors ever turned over Alomar's written statement, the government never offered it as evidence in this case.

Based on the Grade A tag and Colón's criminal history category of IV, the judge fixed his guideline range at 24–30 months in prison.  From that starting point, he imposed a thirty-month prison sentence, adding four more years of supervised release.[3]

At the end of the hearing, Colón reiterated that he "continue[d] to preserve [his] objections under Rule 32.1 to th[e] Court's findings under [Article] 3.2 and whether or not it qualifies as a crime of violence, to th[e] Court's findings under [§] 7B1.4(a) regarding what is the actual conduct in this case, and the substantive and procedural unreasonableness of the sentence that was ultimately imposed[.]"  He then appealed, and here we are.

---

[3] The judge also determined that Colón violated other conditions by using illegal drugs, failing to attend drug treatment, and failing to follow Mendoza's instructions, as alleged in two previous motions Mendoza had filed.  Colón does not argue that the judge erred in finding he committed these other violations, and none of them were Grade As.  See 7B1.1(a)(1).

- 10 -

**Our Take**

On appeal, as he did below, Colón admits that he violated the "no new crimes" condition and does not challenge the district court's decision to revoke his supervised release. Instead, he attacks his thirty-month sentence. In his eyes, the district court misapplied the Guidelines in concluding that his crime was a Grade A violation under U.S.S.G. § 7B1.1(a)(1)(A)(i). We agree.

*Framework*

To be a Grade A violation under § 7B1.1(a)(1)(A)(i), the defendant's new criminal "conduct" must "constitut[e]" a "crime of violence," as defined in § 4B1.2(a). <u>See</u> U.S.S.G. § 7B1.1 and cmt. n.2. Proving this takes two steps. First, the government must point to a federal, state, or local offense that "categorically" meets § 4B1.2(a)'s definition of a "crime of violence." <u>United States</u> v. <u>García-Cartagena</u>, No. 18-1629, ___ F.3d ___ [Slip op. at 16] (1st Cir. March 6, 2020). That means (as pertinent here) that the elements of the alleged crime must require "the use, attempted use, or threatened use of physical force against another person." <u>United States</u> v. <u>Frates</u>, 896 F.3d 93, 97 (1st Cir. 2018); <u>see also</u> <u>United States</u> v. <u>Martinez</u>, 762 F.3d 127, 133 (1st Cir. 2014) (explaining that here, "'physical force' means *violent* force — that is, force capable of causing physical pain or injury to another person" (quoting <u>Johnson</u> v. <u>United States</u>, 559 U.S. 133, 140 (2010)). Sometimes, a state law

might "list elements in the alternative, and thereby define multiple crimes" (meaning it's "divisible").  Mathis, 136 S. Ct. at 2249.  But if the statute defining the offense is overbroad and indivisible, that's it; the crime doesn't count.  See id. at 2257.[4]

On the other hand, if at least one crime defined in the statute requires violent force (or the elements of an offense listed in § 4B1.2(a)(2) or of a "controlled substance offense" under § 4B1.2(b)) to commit it, the court moves to the second step, at which the government must prove by a preponderance of the evidence that the defendant committed that crime.  See García-Cartagena, ___ F.3d ___ [Slip op. at 16, 23-24].  And that means if the statute is overbroad but *divisible*, the government must prove the defendant committed the offense with the required element (here, violent force).  Id. at 16, 23-24.  To do so, it can use any reliable proof it has (including hearsay, at least if the "interests of justice" don't demand live witnesses, Fed. R. Crim. P. 32.1(b)(2)(C)).  Id. at 16, 23-24.  Since the grade of violation depends on actual conduct, the court can look past so-called Shepard documents (like the charging document, jury instructions,

---

[4] The government asserts that the categorical approach does not apply at all in revocation proceedings under § 7B1.1(a)(1), so the district court may skip the first step and find a Grade A violation whenever it determines that the defendant used, attempted to use, or threatened to use physical force against someone (without analyzing the elements of the law the government alleges he violated).  We reject this position in García-Cartagena, ___ F.3d ___ [Slip. op. at 16-23], also issued today.

- 12 -

plea colloquy, or judgment), which are only needed "to determine what crime . . . a defendant was convicted of." Id. at 16–17, 25–26 (quoting Mathis, 136 S. Ct. at 2249).[5]

*Step One: "Crime of Violence"*

To recap, Colón pled guilty to attempted abuse under Article 3.1, and the district judge found he committed aggravated abuse under Article 3.2(i). Abuse is "physical force *or* psychological abuse, intimidation, *or* persecution against [a domestic partner] . . . in order to cause physical" or "serious emotional harm," P.R. Laws Ann. tit. 8, § 631 (emphasis added), and aggravated abuse under Article 3.2(i) is just "abuse" of a pregnant woman, id. § 632. So you don't need violent force for a conviction. The government doesn't urge otherwise; instead, it argues that Article 3.1 (and hence Article 3.2) is "divisible." We said so in United States v. Serrano-Mercado, 784 F.3d 838, 844 (1st Cir. 2015) (addressing Article 3.1). Stressing the word "or," we figured that the law "set[ ] out multiple constellations of elements in the alternative": one "requir[ing] the use or threat of 'physical force'" and "others requir[ing] psychological abuse,

---

[5] In United States v. Willis, the Ninth Circuit reversed the order of operations, instructing courts to first "determine whether the defendant's uncharged conduct constitutes a particular statutory offense" and *then* "determine if such an offense meets the specified criteria." 795 F.3d 986, 993–94 (9th Cir. 2015). We're agnostic on the sequence.

- 13 -

intimidation or persecution." Id. And we saw a "strong" argument "that the statute's 'physical force' element involve[d] the kind of violent force 'capable of causing physical pain or injury to another person,'" making it a crime of violence. Id. at 845 (quoting Johnson, 559 U.S. at 140). So we affirmed the use of the sentence enhancement at issue (U.S.S.G. § 2K2.1(a)(3)). Id. at 850. Based on Serrano-Mercado, the government says we're bound to conclude Article 3.1 is divisible and that abuse by "physical force" is a crime of violence.

But that's not quite right. In Serrano-Mercado, we reviewed the issue for plain error, so the most we needed to decide was that Article 3.1 was not "obvious[ly]" indivisible. Id. at 844–45. Such a "no-plain-error holding" wasn't a "ruling on the merits" (i.e., whether Article 3.1 *was* in fact divisible, and if so, whether the "physical force" version was indeed a "Crime of violence"). See Rodríguez–Miranda v. Benin, 829 F.3d 29, 41, 44–45 (1st Cir. 2016). And anyway, the defendant *conceded* that Article 3.1 was divisible into multiple offenses. See Serrano-Mercado, 784 F.3d at 846. Given the parties' agreement on the issue, we assumed that any statute listing items in the disjunctive was divisible, without asking whether Article 3.1's methods of "abuse" were distinct elements (i.e., facts the prosecution must prove to sustain a conviction) or merely various factual ways of committing the offense. See id. at 843. A year later, however,

- 14 -

the Supreme Court clarified that there's a difference; a statute that "merely specifies diverse means of satisfying a single element of a single crime," so that a jury "need not find (or a defendant admit) any particular item," is indivisible. United States v. Faust, 853 F.3d 39, 52–54 (1st Cir. 2017) (quoting Mathis, 136 S. Ct. at 2249, and finding that it overruled circuit precedent that had deemed Massachusetts "resisting arrest" divisible). So, Serrano-Mercado does not establish that Article 3.1 is divisible under Mathis.

In this case, the district judge did not consider whether "physical force" is an element of a distinct crime under Article 3.1 or 3.2, and whether (if so) that force must be "violent" to support a conviction. See Faust, 853 F.3d at 51–53 (citing Mathis, 136 S. Ct. 2248–50). Nonetheless, we need not resolve those questions here — because even if "forcible" Abuse (or Aggravated Abuse) is a discrete (that is, divisible) crime, the government produced no reliable evidence at the revocation hearing to show Colón used physical force to commit it. And the district court's contrary finding — that Colón "use[d] physical violence against his pregnant girlfriend" to violate Article 3.2 — was clear error.

*Step Two: The Actual Conduct*

As we said up front, that finding hinged on the two complaints Malavé filed in Puerto Rico court. As we see it, Colón mounts two attacks on those complaints. First, he invokes Fed. R.

- 15 -

Crim. P. 32.1(b)(2)(C), which gives a defendant in a "revocation hearing" the right to cross-examine the government's witnesses unless the court "determines that the interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1(b)(2)(C). The rule draws from the accused violator's due process "right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." Gagnon v. Scarpelli, 411 U.S. 778, 786 (1973); see Fed. R. Crim. P. 32.1, advisory committee's note to 2002 amendment. So under the rule, the court may not credit an out-of-court statement ("hearsay," in legalese, see Fed. R. Evid. 801(c)) unless it finds that the statement is reliable *and* the government's reason(s) for not having the speaker or author (the "declarant") testify outweighs the defendant's interest in cross-examining him/her. See United States v. Bueno-Beltrán, 857 F.3d 65, 68 (1st Cir. 2017) (citing United States v. Rondeau, 430 F.3d 44, 47-48 (1st Cir. 2005)). In his first challenge, Colón urges the district court abused its discretion when it considered the hearsay in Malavé's complaints without conducting the balancing due process and Rule 32.1(b)(2)(C) require.

In response, the government picks up a thread we dropped earlier; a revocation hearing has two phases, it reminds us: "the guilt or violation-determination phase" and "the sentencing phase." According to the government, Rule 32.1(b)(2)(C)'s

- 16 -

"limited confrontation right" and balancing test, Bueno-Beltrán, 857 F.3d at 68, only apply at the first stage (the violation-finding phase) — not the second (the sentencing phase). See United States v. Ruby, 706 F.3d 1221, 1226-28 (10th Cir. 2013) (so holding). Since Colón admitted that his Article 3.1 offense and drug use broke his release conditions, there was no need for a violation hearing; all that remained was sentencing. That's why, "when Colón appeared for the final revocation, the court proceeded to the sentencing phase" without objection. And at that point (says the government), the court could rely on the hearsay allegations in Malavé's complaint without weighing the government's reasons for not presenting live witnesses.

We can leave the parties' squabble over Rule 32.1(b)(2)(C) for another day[6] — because even if Malavé's

_____

[6] That said, the government's bid to limit Rule 32.1 runs into an immediate hitch; we've already written that Rule 32.1 governs post-revocation sentencing. See United States v. Daoust, 888 F.3d 571, 575 (1st Cir. 2018) (rejecting defendant's argument that Rule 32(h) required notice of the court's intent to impose an above-guideline post-revocation sentence because "procedures for supervised release revocation sentences are delineated in . . . [Rule] 32.1"). Still, this statement in Daoust was arguably dictum; on plain error review, the court only needed to find it not "clear and obvious" that Rule 32(h) applied. See Rodríguez-Miranda, 829 F.3d at 41, 44-45 ("[A] no-plain-error holding does not constitute a 'ruling on the merits.'" (quoting United States v. Caraballo-Rodriguez, 480 F.3d 62, 70 (1st Cir. 2007))). Since Colón does not respond to the government's "Rule-32.1-does-not-apply" argument in his reply brief, and we conclude the complaints were insufficient evidence even if they were admissible, we won't address whether (or how) Rule 32.1(b)(2)(C) applies to evidence used only to determine the post-revocation sentence.

complaints were admissible without live testimony, the district court still had to find they were reliable enough to show that Colón more-likely-than-not used physical force.[7]  See Rondón-García, 886 F.3d at 21, 23; United States v. Zuleta-Alvarez, 922 F.2d 33, 36–37 (1st Cir. 1990) (stating that even when the defendant offers no rebuttal evidence, "the sentencing court still ha[s] to make an independent determination as to the reliability of the [sentence-enhancing] evidence presented by the government," which must "verify the accuracy of its information by a preponderance of the evidence").  In fact, we've repeatedly cautioned against relying on mere charges to "infer unlawful behavior unless there is proof by a preponderance of the evidence of the conduct initiating [those] arrests and charges."  Rondón-García, 886 F.3d at 25–26 (citing United States v. Cortés-Medina, 819 F.3d 566, 570 (1st Cir. 2016)); see also United States v.

---

[7] The government argues that Colón forfeited his "due process and Rule 32.1 contentions" by failing to specify them below.  But Colón timely and repeatedly objected to the district court's use of the complaints to make factual findings about his criminal conduct.  Right after the court read the complaints aloud, Colón "object[ed]" to their use "for purposes of finding what was the criminal conduct committed in this case," arguing they were "not something th[e] Court [could] rely upon to make a factual finding or establish that there was physical violence."  And throughout the hearing, he maintained that "there [was] no factual basis for a finding of a 3.2 violation[ ] or any other criminal conduct [beyond] attempted 3.1."  Even if these objections failed to invoke Rule 32.1's limited confrontation right, they were "sufficiently specific to call the district court's attention" to his more basic gripe: that the complaints were too unreliable to prove he used physical force.

Marrero-Pérez, 914 F.3d 20, 23–24 (1st Cir. 2019) (holding that "error occurs when a district judge relies on an arrest report, without some greater indicia of reliability that the conduct underlying the arrest took place," to impose an upward departure).[8] That's in part because, under U.S.S.G. 6A1.3(a), information relied on to enhance a defendant's sentence must "ha[ve] sufficient

_____

[8] Our plain error holding in Marrero-Pérez also drew from U.S.S.G. § 4A1.3 ("Departures Based on Inadequacy of Criminal History Category"), which states that "[a] prior arrest record itself shall not be considered for purposes of an upward departure under this policy statement." Id. § 4A1.3(a)(3). For that reason, we've questioned (without deciding) whether Marrero-Pérez makes it plain error to rely on bare arrest reports to impose an upward *variance*. See United States v. Miranda-Díaz, 942 F.3d 33, 40 (1st Cir. 2019) (distinguishing a "departure," an out-of-guideline-range "sentence[ ] imposed under the framework set out in the Guidelines," from a variance, which "results from a court's consideration of the statutory sentencing factors enumerated in 18 U.S.C. § 3553(a)" and finding the complained-of variance wasn't plain error because the district court "merely refer[red] to the defendant's dismissed charges in the course of relying on certain conduct that took place in connection with [them] and that conduct [was] described in unchallenged portions of the [PSR]" (internal quotation marks omitted)); United States v. Rodríguez-Reyes, 925 F.3d 558, 564–65 (1st Cir. 2019) (noting the departure-variance distinction, but affirming on plain error because "other 'indicia of reliability,'" including unchallenged facts in the PSR, "support[ed] that Rodríguez engaged in the conduct charged"). If some future case turned on it, it's not clear the departure-variance distinction would hold up as a viable limit on Marrero-Pérez. See United States v. Ríos-Rivera, 913 F.3d 38, 45 (1st Cir. 2019) ("[T]here is no discernible difference between departure and variance sentences." (citing United States v. Santini-Santiago, 846 F.3d 487, 489–90 (1st Cir. 2017))). Anyway, § 4A1.3(a)(3) and Marrero-Pérez both rest on a basic principle equally applicable here: a bare arrest or charge does not prove the defendant committed the crime. See Marrero-Pérez, 914 F.3d at 23 (holding that "no weight should be given in sentencing to arrests not buttressed by independent proof of conduct" because "proof only of an arrest is no proof of guilt").

indicia of reliability to support its probable accuracy." But the roots run deeper; even before the Guidelines regime, the Supreme Court held it violated due process to impose a "sentence[ ] on the basis of assumptions concerning [a defendant's] criminal record which [are] materially untrue." Townsend v. Burke, 334 U.S. 736, 740-41 (1948). "To give content to this right, a court must take pains to base sentencing judgments upon reliable and accurate information." United States v. Tavano, 12 F.3d 301, 305 (1st Cir. 1993); see also United States v. Flete-Garcia, 925 F.3d 17, 36 (1st Cir. 2019) ("[D]ue process demands that a sentencing court 'consider all the available evidence, including conflicting evidence' to 'assure itself that a piece of proof is sufficiently reliable.'" (quoting Tavano, 12 F.3d at 305).

Reflexive reliance on hearsay accusations can hollow out those rights. After all, as the Federal Rules of Evidence and "virtually every State" recognize:

> out-of-court statements . . . lack the conventional indicia of reliability: they are usually not made under oath or other circumstances [like penalty of perjury] that impress the speaker with the solemnity of his [or her] statements; the declarant's word is not subject to cross-examination; and he [or she] is not available in order that his [or her] demeanor and credibility may be assessed by the [factfinder].

Chambers v. Mississippi, 410 U.S. 284, 298 (1973) (citing California v. Green, 399 U.S. 149, 158 (1970)). So when a court extends a defendant's sentence based on hearsay, there must be

other signs (other "indicia of trustworthiness") to permit a reasoned conclusion that the statements are still reliable. See Rondón-García, 886 F.3d at 21 (quoting United States v. Rodríguez, 336 F.3d 67, 71 (1st Cir. 2003)); see also United States v. McGowan, 668 F.3d 601, 606-07 (9th Cir. 2012) ("Challenged information is deemed false or unreliable if it lacks some minimal indicium of reliability beyond mere allegation." (cleaned up)).

We've catalogued examples before. See United States v. Marino, 833 F.3d 1, 5 (1st Cir. 2016). Testimony given in affidavits, depositions, and past trials or hearings usually passes muster because it's based on personal knowledge, sworn under penalty of perjury, and (in a deposition or trial) often sifted through cross-examination. See id. (citing Gagnon, 411 U.S. at 782 n.5); United States v. Cintrón-Echautegui, 604 F.3d 1, 6 (1st Cir. 2010) (trial); United States v. Riccio, 529 F.3d 40, 47 (1st Cir. 2008) (deposition); United States v. Brewster, 127 F.3d 22, 28 (1st Cir. 1997) (affidavit). Courts may dub other out-of-court statements reliable if they fall into a recognized exception to the hearsay rule, Rondeau, 430 F.3d at 48 (statements in 911 call reporting threat with gun were reliable as excited utterances under Fed. R. Evid. 803(2)), if other evidence corroborates them, United States v. Fontanez, 845 F.3d 439, 443 (1st Cir. 2017) (surveillance video of stabbing "corroborated the victim's account of the incident (as related to [the testifying police officer])" and

"confirmed the victim's identification of the appellant"); Mills, 710 F.3d at 16 (informants' statements "were detailed, mutually corroborative on key points, and compatible with the events surrounding [the defendant's] arrest"), or if the witness's account is "replete with details," among other signs of reliability, Rodríguez, 336 F.3d at 70-72 (where the court properly found that the defendant induced another inmate to write a false letter to the court based on the AUSA's summary of an FBI interview in which the inmate disclaimed the letter, bolstered by the letter's "conclusory" nature and the defendant's earlier attempt to pull similar shenanigans).

But when those signs (or others like them) are absent, hearsay alone cannot support the sentence. In Rondón-García, for example, the sentencing court considered a letter from the defendant's late wife (alleging he'd threatened and abused her) and unsourced info from a probation officer suggesting the defendant arranged her murder. 886 F.3d at 23. We held that relying on this information was obvious error "on both notice *and* reliability grounds" because the hearsay allegations were uncorroborated, undetailed, and undisclosed to the defendant before sentencing. Id. n.2 (emphasis added). We also "express[ed] our distaste for [the] district court's reliance on [the] defendant's record [described in the PSR] of prior arrests and charges without convictions" to vary upward from the guideline

range (even when the PSR "contained detailed facts underlying the individual charges"), warning that "[a] court imposing incarceration for a later crime cannot simply presume that past charges resolved without conviction ... are attributable to flawed or lax prosecutorial or judicial systems rather than the defendant's innocence." Id. at 25-26 (quoting Cortés-Medina, 819 F.3d at 576-77 (Lipez, J., dissenting)). We ultimately affirmed, but only because Rondón's two procedural challenges "succumb[ed] to the heavy burden of plain error review." Id. at 24, 26 (explaining that the claims failed on prongs four and two, respectively); see also Marrero-Pérez, 914 F.3d at 23-24 (relying in part on Rondón-García to deem it plain error to depart upward based on an arrest report "without some greater indicia of reliability that the conduct underlying the arrest took place").[9]

---

[9] In at least two other cases, even though the hearsay statements had some indicia of reliability, we remanded for resentencing because other evidence undermined their credibility and the district court did not explain why it still relied on them. See United States v. Lacouture, 835 F.3d 187, 190 (1st Cir. 2016) (vacating sentence and remanding for district court to explain if and why it found transcript of child victim's statements during investigative interview were reliable despite inconsistent police reports); United States v. Jimenez-Martinez, 83 F.3d 488, 494 (1st Cir. 1996) (holding that co-defendant's affidavit alleging defendant took part in a three-kilo drug deal could not support sentence increase without more evidence because defendant proffered that affiant did not understand defendant's language, the affiant never testified in court or grand jury, and no other evidence corroborated his story).

In United States v. Taveras, we vacated a revocation judgment that was also based on uncorroborated, unsworn hearsay with no other marks of reliability. 380 F.3d 532, 535-38 (1st Cir. 2004). A probation officer had testified that in two short interviews, a woman told her the defendant had threatened her with a gun. Id. at 535-36. But the accusations didn't satisfy a hearsay exception (they were not "excited utterances"), were "neither written nor sworn," and "the government failed to provide *any* corroborating evidence" or "any background details about [the declarant] or her relationship with [the defendant]." Id. at 537-38. Such "[u]nsworn verbal allegations," we noted, are "the least reliable type of hearsay." Id. at 537 (quoting United States v. Comito, 177 F.3d 1166, 1171 (9th Cir. 1999)); see also Marino, 833 F.3d at 7 ("[A]n affidavit is substantially more reliable because it is both in writing — eliminating reliance on the listener's memory — and sworn to."). Though we relied on Rule 32.1, our result did not hinge on its balancing test; instead, we concluded the hearsay was "wholly unreliable" and couldn't support the violation finding — even if the government couldn't (at least without great difficulty) produce the woman (who'd disappeared) in court. Taveras, 380 F.3d at 536 n.7, 538.

In this case, the district court had even less reason to trust the unattributed, uncorroborated hearsay allegations rehashed in Malavé's complaints. First, the accusations were

double hearsay: the complaints (themselves hearsay) were sworn only "on information and belief" — in other words, on "secondhand information that [Malavé] believe[d] to be true." Information and Belief, on, Black's Law Dictionary (11th ed. 2019); see also P.R. Laws Ann. tit. 34, Ap. II, § 5 (permitting "prosecutors and members of the State Police" to "sign and swear to complaints when the facts constituting the offense are known to them by information and belief"). Second, they did not indicate where Malavé got his info or how he formed his belief. And even assuming he got the story from Alomar (instead of other officers, for example), there was no evidence of how the two spoke (e.g., in person or over the phone), in what circumstances, or for how long — so there was no reason to think that Malavé had "an opportunity to observe [Alomar's] demeanor during the interview" or had any other basis to judge her credibility. See United States v. Fennell, 65 F.3d 812, 813 (10th Cir. 1995) (holding that probation officer's testimony, which repeated "unsworn out-of-court statements made [over the phone] by an unobserved witness and unsupported by other evidence" could not sustain the defendant's sentence enhancement). Third, other than the fact that she lived with Colón briefly, the complaints supplied no background on Alomar, her relationship with Colón, or how it soured. See Taveras, 380 F.3d at 538. And finally, the Puerto Rico magistrate did not even find probable cause to support the Article 3.3 charge, casting even more

suspicion on the threat complaint (if not both of them). In short, the district court had no reasonable basis to find the contents of Malavé's complaints were reliable "beyond mere allegation." McGowan, 668 F.3d at 606-07.

So it was clear error for the judge to conclude, as he did, that Colón's "actual conduct was the [conduct] charge[d]" in the complaints. Standing alone, those bare charges — "without some greater indicia of reliability that the conduct underlying [them] took place" — could not prove by a preponderance of the evidence that Colón "us[ed] physical violence against his pregnant girlfriend," as the judge found. Marrero-Pérez, 914 F.3d at 24; see Rondón-García, 886 F.3d at 25-26 (warning that "a criminal charge alone," without more, does not prove "criminal guilt of the charged conduct" (quoting United States v. Gallardo-Ortiz, 666 F.3d 808, 815 (1st Cir. 2012))).[10]

In making that finding, the judge also noted that "the [U.S.] magistrate judge found probable cause as to Mr. Colón's violation of Article 3.2 and 3.3." But of course, "the sentencing

---

[10] The probation officer's in-court testimony (that Alomar told the same story to him and Malavé) might have given the accusations more oomph, but no transcript of that testimony was filed before (or at) the final revocation hearing, and the district judge gave no indication he'd listened to an audio recording or reviewed some other record of the testimony. Indeed, at the revocation hearing, the government referred only to the "minute of [the preliminary] hearing" on the docket, which just said the magistrate judge "found probable cause after listening to [Mendoza's] testimony."

court [must] make an independent determination regarding the reliability of all proffered evidence," Zuleta-Alvarez, 922 F.2d at 35-36, and a district court may not rely on another (federal or state) judge's probable cause determination to find that the government's proof met the higher "preponderance" standard, see United States v. Rivera, 825 F.3d 59, 63 (1st Cir. 2016) (noting that "probable cause does not demand . . . proof by a preponderance of the evidence").[11]

## Bottom Line

So all told, the district judge's Grade A finding — based only on unsubstantiated allegations in a charging document — was clear error. And that error inflated Colón's guideline range. As we said earlier, "a district court's error in calculating the guideline range requires resentencing where it 'affects or arguably affects the sentence imposed.'" Lacouture, 835 F.3d at 189 (quoting United States v. Ramos-Paulino, 488 F.3d 459, 463 (1st Cir. 2007)). And that's true here; the district court rattled off its "physical force" and "Grade A" findings when it imposed the sentence and gave no hint it would've given the same sentence

---

[11] For those reasons, the Puerto Rico magistrate's finding that there was probable cause to support the Article 3.2 charge doesn't help, either.

without them.  As such, we must *vacate* and *remand* for resentencing.[12]

---

[12] In the conclusion of his brief, Colón asks us to direct that a different district judge handle resentencing, saying the previous judge's factfinding was "problematic" and citing United States v. Hernández-Rodríguez, 443 F.3d 138, 148 (1st Cir. 2006) (noting that "[t]here are occasions when a matter is appropriately remanded to a different district judge not only in recognition of the difficulty that a judge might have putting aside his previously expressed views, but also to preserve the appearance of justice"). "Ordinarily," however, "district judges are free to keep or to reassign remanded cases in accordance with local rules and practice," United States v. Bryant, 643 F.3d 28, 35 (1st Cir. 2011), and Colón does not explain why remanding to a different jurist here would "preserve the appearance of justice."  His argument to that effect is therefore waived.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).